## ALLAIRE v. ALLAIRE.

1. A transcript of the record of probate of a will devising lands made before the surrogate, is competent evidence of title in an action of ejectment if the record contains the proofs taken before the surrogate, as required by the statute; and if the proofs contained in the record show that the will was executed with all the formalities required by the statute of wills, the probate will be *prima facie* evidence, and will of itself be sufficient to establish the title, if not overcome by counter proof.

2. The heir-at-law is not concluded by the probate from disproving the *prima facie* title shown by its production. He may controvert the effect of the probate by proof of the insanity of the testator, or the want of any of the legal requisites of a valid will, and may impeach its validity in any manner which would be permitted if the original will had been produced and proved by witnesses.

3. The competency of the record of probate before the surrogate as evidence or its effect as *prima facie* proof, is not destroyed by the pendency of an appeal taken from the order of the surrogate admitting the will to probate.

4. The act of 1846, (*Nix. Dig.* 1033,) puts the record of a foreign will, recorded in this state under the provisions of that act, on the same footing as an instrument of evidence as the record of a will proved in the first instance before one of the surrogates of this state.

5. The act of the surrogate in admitting a foreign will to record under the act of 1846, is a judicial proceeding in which the foreign probate is used merely as evidence, and the subsequent reversal of the original probate by the courts of the state in which it was made, will not annul the record of the surrogate, or deprive it of its effect as evidence.

6. The attestation clause annexed to a will and signed by the witnesses, is *prima facie* evidence of the facts stated in it, which can only be overcome by affirmative proof to the contrary.

7. If the attestation clause is perfect and shows on its face that all the forms required by the statute have been complied with, and the subscribing witnesses, when called, admit their signatures, but through defect of memory, or for any other reason, fail to testify to the due execution of the will, it may be established on the presumption arising from the form of the attesting clause, unless there be affirmative evidence given to disprove its statements.

In ejectment to recover possession of lands in the county of Monmouth.

Allaire v. Allaire.

On rule to show cause why the verdict for the plaintiff, rejecting the will of James P. Allaire, should not be set aside.

Argued at November Term, 1874, before BEASLEY, Chief Justice, and Justices DALRIMPLE, DEPUE and SCUDDER.

For the rule, *Cortlandt Parker* and *Browning.*

I. The evidence distinctly and conclusively proves due execution of the will, whether the earliest or later testimony of Lucius Hart be taken as ruling.

Hart and Halsey are both dead. The attestation clause is therefore evidence and controlling.

As to effect of attestation clause: *Redfield on Wills* 238–9; *Gorr* v. *Gowen,* 3 *Curt.* 151; *Blake* v. *Knight,* 3 *Curt.* 547; *Cooper* v. *Becket,* 3 *Curt.* 648; 1 *Jarman* (ed. 1861,) 79; *Patterson* v. *Tucker,* 4 *Halst.* 329; *Mundy* v. *Mundy,* 2 *McCarter* 292; *Matter of Kirkpatrick,* 7 *C. E. Green* 464; *Remsen* v. *Brinckerhoff,* 26 *Wend.* 325; *Garrison* v. *Garrison,* 2 *McCarter* 266; *Mickle* v. *Matlack,* 2 *Harr.* 112; *Kirk* v. *Case,* 54 *Pa.* 285.

Defect of memory in a subscribing witness not permitted to defeat the will. 10 *Leigh* 13; *Re Holgate,* 5 *Jur.* (*N. S.*) 251; *Redf. on Wills* 238.

Presumption is *omnia rite acta. L. R.* 1 *Prob. & Div.* 145.

Especially when witnesses are dead. *Redfield* 238; *Trott* v. *Skidmore,* 6 *Jur.* (*N. S.*) 764; *Re Johnson,* 2 *Curt.* 341.

The evidence and these authorities considered.

II. The court should have directed the jury that the will was proved.

IV. Instead of which, the jury was directed that if they thought the original attestation stopped with the word " names," it was not full proof of execution, which was error.

Overruling thus. *Mundy* v. *Mundy; Matter of Kirkpatrick; Comyn R.* 531; 2 *Strange* 1101; *Ela* v. *Edwards,* 16 *Gray* 96; 2 *Eq. Ca. Abr.* 764.

V. There was an error in the charge that "upon the face of the will these questions arise : Was this (attestation) clause written out in full, as it now stands, before the witnesses, or the first two of them, signed their names ? "

No such question arises on the face of the will. No such suspicion was lawful or reasonable.

The jury should have been told that there was no ground for any such suggestion. *Shepherd's Touchstone* 69 ; *Trott* v. *Skidmore*, 6 *Jur.* (*N. S.*) 764.

VI. The court erred in the statement in relation to the laws of New York.

No evidence was given of these laws. If there was, no inference could be drawn such as suggested, without proof that Allaire or Halsey knew the difference between them and those of New Jersey.

The attestation is in a stereotype form.

As to law of New York, see *Robins* v. *Coryell*, 27 *Barb.* 556 ; *Remsen* v. *Brinkerhoff*, 26 *Wend.* 325.

VII. Were there no other evidence in the cause than Tatham's, and the will with its attestation clause, the instrument was proved, and the jury should have been so told.

There was an execution by acknowledgment before two subscribing witnesses, as well as by signing before two.

Halsey, on the evidence, went with testator to Tatham, and testator there told him it was his will, and obtained his signature.

Halsey having already signed, the signature by Tatham in testator's and his presence made the will good. *Redfield* 279 ; *Faulds* v. *Jackson*, 6 *Notes of Cases, Supp.* 1; *Sugden's Essay* 737 ; *Re Webb*, 1 *Jur.* (*N. S.*) 1096.

VIII. The court erred in saying that the court had nothing to do with the apparent discrepancy of Mr. Hart's recollection at the different times he was sworn. The jury should

have been told that Hart's recollecting more was no contradiction, and that they should rely on it.

IX. The court mistook the testimony when they said that Tatham said Mr. Halsey was not there when *he* signed.

X. The New Jersey probate was *prima facie* proof, not contradicted by any other, and should have carried the cause. But it was not regarded in the charge. *Nixon* 1033, *pl.* 33, § 3 ; 2 *Dutcher* 260 ; *Wallace* v. *Wallace*, 2 *Green's Ch.* 616.

XI. Throwing the attestation clause out, the evidence at the jury trial in New York, of Lucius Hart, conclusively proved the will. The court should have so told the jury.

Hart's first testimony would not contradict or impair the force of the attestation clause. How can it do so as to the evidence which repeated the attestation ?

XII. The court erred in directing the jury that the deed to Calicia given by testator, was evidence in regard to the execution of the will. The latter was dated October 7th, 1850 ; the deed, August 25th, 1857. *Boylan* v. *Meeker*, 4 *Dutcher* 274 ; 2 *Phillips* 646—650.

XIII. With all these criticisms on the charge, the verdict was nevertheless contrary to it, as well as to the weight of evidence. We insist, however, that the charge should have been more emphatic for the defendant ; that we were entitled, as a matter of law, and under the circumstances, to a charge that the will was proved.

XIV. The court erred in all the points excepted to and with peculiar injury in saying that if the original attestation stopped with the word " names," it was not a full proof of execution.

*Contra, H. C. Pitney* and *Mr. Bonney*, of Chicago.

The opinion of the court was delivered by

DEPUE, J.   James P. Allaire, a resident of the city of New York, died on the 20th of May, 1858.  By a paper, purporting to be his last will, and bearing date on the 7th of October, 1850, he devised the premises in question to his widow.   The plaintiffs are the heirs-at-law of the deceased, and the widow is the defendant.   The only controversy is, whether there was sufficient proof of the execution of the will to pass the title to lands in the state of New Jersey.

The will was admitted to probate by the surrogate of the city of New York, on the 18th day of January, 1860.   On the 21st of January, 1860, an exemplified copy of the will, as proved in New York, was filed with the surrogate of the county of Monmouth, and proceedings were taken for a grant of letters testamentary thereon, pursuant to the act entitled " an act relative to the probate of wills from other or foreign states."   *Nix. Dig.* 1032.   Under these proceedings, the surrogate recorded the will, and granted letters testamentary thereon, on the 27th of February, 1860, in compliance with the statute.   Subsequent to the recording of the will and the granting of letters thereon by the surrogate of the county of Monmouth, an appeal was taken in the state of New York from the original probate before the surrogate of the city of New York to the Supreme Court of New York, and the probate made before the surrogate was reversed on the 21st of May, 1863, and an order made for the trial of certain issues before a jury.   For what reason the decree of the surrogate was reversed, does not appear.

The original will was also proved *de novo* before the surrogate of the county of Monmouth, on the 3d day of September, 1870, in the usual manner, by the affidavit of Lucius Hart, one of the subscribing witnesses, and letters testamentary were issued thereon.   The affidavit of Hart, on which the probate before the surrogate of Monmouth was made, does not appear in the printed case.   By the seventeenth section of the Orphans Court act, (*Nix. Dig.* 643,) the surrogate is required to record all wills proved before him or the Orphans Court,

together *with the proofs thereof*, which records are declared to be of the same force, validity, and effect as the like records in the Prerogative Court, and the transcript of *such* records, certified under the hand and seal of the office of the surrogate, are made competent evidence, and are given the same validity and effect as transcripts certified by the registrar of the Prerogative Court. The exemplification of the record of the will without the proofs was not receivable in evidence. The whole record, including the proofs, should have been certified, to make the transcript competent evidence. *Morris* v. *Keyes*, 1 *Hill* 540. As the transcript was received by the judge, it will be assumed that, in this respect, the record was complete.

Notice of appeal from the order of the surrogate admitting the will to probate, was filed March 31st, 1871, and a petition of appeal was filed on the 10th of July, 1871, to which an answer was filed by the executrix on the 19th of August, 1871. On the 9th of December, 1872, an amended petition of appeal was filed, and in December, 1873, a rule to show cause why the appeal should not be dismissed, was obtained by the executrix, the hearing of which was postponed by the court to May Term following. There the proceedings on the appeal seem to have stopped. The writ in the action of ejectment was returnable to the 8th day of July, 1872, and this cause was tried at the May Term, 1874.

The defendant offered in evidence transcripts of these two probates before the surrogate of the county of Monmouth. She also produced the original will, and gave such proof of its execution as made it competent evidence.

The verdict of the jury was in favor of the plaintiffs, and a rule to show cause why a new trial should not be granted was allowed.

The cause has been argued on the burden of proof, as well as the effect of the evidence laid before the court at the trial.

At common law, the probate of a will before an ecclesiastical court, was not competent evidence in a court of law on an issue involving the title of lands. By the second section of the act of the 7th of March, 1713–14, it was enacted, that all

wills thereafter made in the manner pointed out by the act, and regularly proved and entered upon the books of records or registers in the secretary's office, should be sufficient to devise and convey any lands, tenements, hereditaments or other estates, as effectually as if the testator had conveyed the ·same in his lifetime, and that the books in which they are registered or recorded, might be given in evidence, and should be accepted of and be sufficient evidence at all times and places," &c. *Nix. Dig.* 1034, § 37. The title of the act is, " An act for confirming of conveyances of lands made and to be made by wills and powers of attorney, and declaring what exemplifications of records and other things shall be holden and received for good evidence of estates," &c. This act has never been repealed. Its provisions have merely been altered by the act of 1851, (*Nix. Dig.* 1032,) with respect to the number of witnesses required to the valid execution of a will, and the mode of execution. In other respects, the section referred to is still the law of this state.

By the act of June 7th, 1799, section 7, a transcript from the books in which any will was recorded when duly certified, was made competent evidence in any court, and declared to be as good and effectual as if the original will or the books in which it was recorded, were produced and proved. *Pat.* 397. In the revision of 1820, this section was substantially re-enacted as section forty-two. *R. L.* 789. By the twenty-second section of the same act in the revision of 1820, the record of probate before the surrogate or before the Orphans Court, and transcripts therefrom, certified under the hand and seal of office of the surrogate, were made competent evidence, and given the same force and effect as the record of the Prerogative Court, and transcripts therefrom certified by the registrar. *R. L.* 783. The forty-second section of the act of 1820, is the eighth section of the Prerogative Court act, (*Nix. Dig.* 769,) and the twenty-second section is the seventeenth section of the Orphans Court act, which has already been referred to. *Nix. Dig.* 643.

By force of these statutes, a transcript of the record of the

probate of a will devising lands made before the surrogate, is competent evidence in an action of ejectment, if the record is made up in the proper form ; that is, if it contain the proofs taken before him as is required by the statute, without which the transcript cannot be received in evidence. *Morris v. Keyes, supra.* The heir may contend that upon the proof made before the surrogate, the will has not been executed in compliance with the statute. But if the proofs contained in the record, show that the will was executed with all the formalities required by the statute, the probate will be *prima facie* evidence, and will of itself, be sufficient to establish the title, if not overcome by counter proof. *Den v. Allen,* 1 *Penn.* 35 ; *Jackson v. Rumsey,* 3 *Johns. Cas.* 234. Not that the heir will be concluded by the probate from disproving the *prima facie* title shown by its production. He may controvert the effect of the probate, as was said by Rossell, J., in *Den v. Allen,* by proof of the insanity of the testator, or the want of any of the legal requisites of a valid will under the acts of the legislature. He may also impeach its validity in any other manner which would be permitted if the original will had been produced and proved by witnesses. The record of a will with the statutory proof of its execution, is like the record of a deed duly acknowledged and certified to, *prima facie* evidence of its authenticity, which may be repelled by contrary proof. *Jackson v. Rumsey,* 3 *Johns. Cas.* 324; *Morris v. Keyes, supra.*

The act of 1846 puts the record of a foreign will, recorded in this state under the provisions of that act, on the same footing as an instrument of evidence, as the record of a will proved in the first instance before one of the surrogates of this state. *Nix. Dig.* 1033. It was so regarded by Chancellor Vroom, in *Wallace v. Wallace,* 2 *Green's Ch. R.* 616 ; and by Chief Justice Green, in *Graham v. Whiteley,* 2 *Dutcher* 254. Indeed, the language of the third section of the act, which declares that the record of such wills, when recorded as therein provided, and duly certified, copies thereof "shall be evidence in the same manner, and have the same force

and effect in all courts of law and equity as such record, or copies thereof, would have if such will had been proved in the usual manner under the existing laws of this state," is so precise and specific as to leave the effect of such probate in no doubt.

Nor will the competency of the record as evidence, or its effect as *prima facie* proof, be destroyed by an appeal taken from the order of the surrogate admitting the instrument to probate. The court from which, or to which, the appeal is taken, may suspend its operation on the office of the executor by the appointment of an administrator *pendente lite*. And, as a matter of practice, on an appeal from the decree of a probate court to an appellate court, where the case is reheard on testimony to be there produced, the will is to be proved as if first offered there for probate whether the decree appealed from be in favor of or against the will. *Brooks* v. *Barrett*, 7 *Pick.* 94. But, nevertheless, on the allowance of probate by the surrogate, he proceeds to record the will notwithstanding the appeal, and the record thus made, which by the statute is constituted legal evidence, is not vacated by the appeal. To construe the act so that the record, which is complete when the surrogate has concluded his duties, shall not be operative as evidence, where an appeal has been taken, would be in violation of the plain and unambiguous language of the statute, and would, by judicial legislation interpolate in the act a qualification on the obvious intent of the legislature, of doubtful policy. Under such a construction the heir, or even a distributee, who has no interest in the lands, by vexatious appeals from court to court, would be able for a time to deprive the devisee of the clear statutory right of using the probate before the surrogate as evidence of his title, not only against the heir but also against third persons, against whom he might have occasion to make title. The inconvenience the heir may be subjected to in having the probate made *prima facie* evidence of title in any controversy between him and the devisee, when the probate has been improperly obtained, may easily be obviated by postponing his action of ejectment

until the litigation of the probate on the appeal has been disposed of.

If, on the hearing of the appeal, a reversal of the order of probate has been obtained before the trial of the ejectment, though an adherence to the literal terms of the act would make the record still competent evidence, its admission would be barren of any result. The reversal of the judgment or decree of an inferior court, by a court of review, entirely destroys its effect as a judicial determination. Thereafter it is as if it never had been. Upon such a presentation of title the jury would be instructed to find in favor of the heir-at-law.

These principles of law are applicable as well to the record of a foreign will under the act of 1846, as to the record of the probate of a will before the surrogate in the usual manner.

By the fourth section of the act of 1713–14, (*Nix. Dig.* 1034,) an exemplification of a will devising lands made in another colony, under the great seal of such colony, was made competent evidence, and as valid and sufficient as proof, as if the original will were produced and proved. By the second section of the act of 1846, (*Nix. Dig.* 1033,) an exemplification in the manner in which such instruments are usually exemplified in the state, territory, or kingdom where the will has already been admitted to probate, and which would be sufficient to make such copy legal evidence in the courts of such state, territory, or kingdom, is the authentication on which the surrogate is required to act, and thereupon, if no cause appear to the contrary, he is required to record such wills, and to grant letters testamentary thereon. Another instance of the legislative policy of this state, with respect to wills of persons resident without the state, as muniments of title to lands, is the act of March 28th, 1866, (*Nix. Dig.* 1035,) which was repealed in 1872, (*Acts of* 1872, *p.* 58,) and restored in 1873, (*Acts of* 1873, *p.* 168.) All these acts are to be construed in subordination to the principle of international law that, with regard to real property, the laws of the place where such property is situate, exclusively govern in

respect to the rights of the parties, the modes of transfer, and the solemnities which should accompany them.  In a contest in the courts of this state, in relation to the title to lands, the heir may contend that, upon the face of the record, it is not shown that the will was executed in the manner required by our laws to effect a testamentary disposition of lands.  And if it does so appear on the face of the record, he may controvert its truth, and oppose the title under such devise by any means, which would be open to him in case the will had been proved as a domestic will.

It remains to consider what effect the reversal of the probate before the surrogate of New York by the Supreme Court had on the proceeding of the surrogate of Monmouth county, in admitting the will to record as a foreign will.

In recording a foreign will, the surrogate receives no proof of the factum of the will.  The proof he acts upon is the probate before a foreign tribunal, and the evidence laid before him is a copy of the instrument, and its foreign probate authenticated in such manner as would make it competent evidence in the courts of the country in which it has been proved.  By the statute, this mode of authenticating the instrument is substituted in the place of the usual proof by witnesses.  But, nevertheless, the surrogate, in admitting the will to be recorded, and issuing letters testamentary thereon, acts judicially.  He is to assign a time and place for hearing parties, and to give public notice thereof.  He is not required to admit the will to record, and issue letters thereon, if the foreign probate shall be duly exemplified.  He has a judicial discretion to refuse the probate, if sufficient cause appear to the contrary.  If it shall appear that the court in which the foreign probate was obtained had no jurisdiction, or that the probate was obtained by fraud, or that it has been reversed on appeal, or that an appeal is pending, or if any other legal grounds of objection are made to appear which in his judgment are good cause for withholding the probate, he may do so.  That the proceedings of the surrogate, in admitting the will to record, are judicial proceedings, and that his determi-

nation is a judicial act, and that his decision has the force
and effect of the judgment of a judicial tribunal, with which
the foreign probate has no connection, except as evidence pro-
duced before him, are manifest from the provisions of the
statute.   Whatever force and validity the record and letters
obtain, are not derived from the foreign probate, but result
by virtue of the statute from the judicial act of the surrogate.
Similar views have been expressed by the courts of Massa-
chusetts, upon the statute of that state, of 1785, of which our
act, in its main features, is a copy.   *Dublin* v. *Chadbourne*,
16 *Mass.* 434 ; *Crippin* v. *Dexter*, 13 *Gray* 330.

From the conclusion that the proceedings of the surrogate,
in admitting a foreign will to record, are judicial proceedings,
it would follow as a necessary result, that an appeal therefrom
would lie, as in other cases, to the appellate courts of this
state.   It would also follow that the subsequent reversal of
the original probate by the courts of the state in which it was
made, would not annul the record of the surrogate here.   If
subsequent proceedings in the foreign court on the original
probate should control or determine the record here, curious
results would follow : the decree of the surrogate of New
York, being reversed, the record in our state made upon the
probate while it was subsisting, would become null ; if, on
the issue ordered, the jury should find in favor of the will,
the record would be revived ; and, if the Court of Appeals
should find errors in law at the trial, and again reverse, the
record would again fall.   It is easy to see into what confusion
we should be led by subjecting a judicial record of our own
tribunals to the vicissitudes of litigations elsewhere, and what
doubt and uncertainty would be thrown over the title to lands.
No purchaser would accept title in which the will of a non-
resident placed on record under the statute formed a link ;
nor would counsel venture to advise thereon until the records
of the state or country in which the testator was domiciled
had been explored, to ascertain what action its courts had
subsequently taken on the original probate.

The record, when once made, stands on its own inherent

strength, like the record of the judgment of a court of this state, in a suit in which a foreign judgment is the cause of action. A subsequent reversal of the foreign probate, which was only evidence before the surrogate, will no more vitiate his decree than the reversal of a foreign judgment after it has been sued on and passed into a judgment of this state, will avoid the latter judgment. And so long as the record of the surrogate remains in force, and is not annulled, the statute declares what effect it shall have as evidence.

Nor does the fact that the reversal in the Supreme Court of New York was had in a suit to which the present litigants were parties, give it any greater force. The present litigation involves an issue of title to lands in this state, and the principal question at issue is, whether the will under which the defendant claims, was executed in compliance with the laws of this state. The subject matter of the litigation is not within the jurisdiction of the courts of New York, and the issue in that tribunal was, whether the will was executed with the formalities required by the laws of that state. Neither the subject matter, nor the question in issue, is within the cognizance of the courts of New York.

Either of the probates before the surrogate of Monmouth, made a *prima facie* title in favor of the defendant. The testimony as to the appeal from his order on the second probate, as well as that relating to the reversal of the probate in New York, was irrelevant and incompetent, except so far as the latter was necessary to lay the foundation for the introduction of the testimony of the deceased witnesses.

The defendant also relied on the original will to establish her title. The contention at the trial was, the will had not been executed in conformity to the statute. The requirements of the statute are: (1) That the will shall be in writing. (2) That it shall be signed by the testator—which signature shall be made by the testator, or the making thereof, acknowledged by him—and such writing declared to be his last will in the. presence of two witnesses, who shall be present at the same time; and (3) That the witnesses shall subscribe their names

thereto as witnesses, in the presence of the testator. *Nix. Dig.* 1012, § 24.

The statute does not prescribe any form in which the witnesses shall certify their attestation. A will signed by the testator and subscribed by a sufficient number of witnesses, may be established, by testimony *aliunde,* that the formalities which are necessary, have been observed ; but if there be no attestation clause, or if the attestation clause does not contain all the requisites to the making of a will, affirmative proof must be made of its execution in the manner and with the formalities prescribed by the statute. *Roberts* v. *Phillips,* 4 *E. & B.* 450, 457 ; *Mundy* v. *Mundy,* 2 *McCarter* 290 ; *Chaffee* v. *Baptist Missionary Convention,* 10 *Paige* 85.

But although a testimonium clause be not indispensable, a certificate of attestation, which comprises a statement of all that is requisite to the formal execution of the instrument as a will, is in the highest degree useful with respect to the proof at the trial. It is *prima facie* evidence of all the facts stated in it. If, by reason of the death of the attesting witnesses, or their absence beyond the reach of process, or for any other cause, a foundation be laid for the introduction of secondary evidence, proof of their signatures will be evidence that what they attested, in fact, did take place. *Jauncey* v. *Thorn,* 2 *Barb. Ch. R.* 42 ; *Nickerson* v. *Buck,* 12 *Cush.* 332. And if the attesting witnesses, when called, admit their signatures, but through defect of memory, or for any other reason, fail to testify to the due execution of the will, it may be established on the presumption arising from the form of the attesting clause, unless there be affirmative evidence given to disprove its statements.

In *Wright* v. *Rogers,* 1 *L. R., Prob. & Div.* 678, Lord Penzance decreed probate of a will, although the only surviving attesting witness testified that the will was not attested by the witnesses in the testator's presence, as required by the English statute. No other witness, either to disprove or corroborate his statement, was produced, but the court taking all the circumstances of the case into consideration, refused to act on his

recollection, and admitted the will to probate. The circumstances mainly relied on were, that the two witnesses were an attorney and his clerk; that the attorney was a gentleman of long experience, and that the will had a perfect attestation clause. In pronouncing judgment, the judge says : " The court ought to have, in all cases, the strongest evidence before it believes that a will, with a perfect attestation clause and signed by the testator, was not duly executed, otherwise the greatest uncertainty would prevail in the proving of wills; the presumption of law is largely in favor of the due execution of a will, and in that light, a perfect attestation clause is a most important element of proof."

In Mundy *v.* Mundy, Chancellor Green states the principle with characteristic exactness, in this language : " The attestation clause with the signatures of the witnesses is *prima facie* evidence of the facts stated in it. It may be overcome by the witnesses themselves, or by other witnesses, or by facts and circumstances irreconcilable with its verity. If there is no attestation clause, the case is different. In the one case there must be affirmative proof of publication and of the other requisites ; in the other, there must be affirmative proof of the want of those requirements." With this statement of the law, I am content without referring to the numerous cases which may be cited to the same effect. *Remsen* v. *Brinkerhoff,* 26 *Wend.* 325; *Chaffee* v. *Baptist, &c.,* 10 *Paige* 85 ; *Kirk* v. *Carr,* 54 *Penn.* 285 ; 1 *Redfield on Wills* 237, and notes ; *Redfield's Am: Cas. on Wills* 677.

The attestation clause, as it appears on the face of the will, is complete in every respect. It is as follows : "Signed, sealed, published and declared, by the above named testator, as and for his last will and testament, in the presence of us, who have hereunto signed our names at his request, in his presence and in the presence of each other as witnesses thereunto, the date above written." The names of the attesting witnesses are "Abraham Halsy, 102 Sackett street, Brooklyn; Lucius Hart, 132 East Thirteenth street, New York; and Benjamin Tatham, 107 East B. way, New York." The signatures of

the testator and the attesting witnesses are admitted to be genuine. The will and the attesting clause are in the handwriting of Mr. Halsey, one of the attesting witnesses. The names of the attesting witnesses are signed in the order above mentioned on the left hand side of the paper. The names of the first two, with their residences, are on the left side of a bracket drawn down about the middle of the sheet. Mr. Tatham's name is signed below with a bracket drawn a little to the right of the bracket at the end of the names of the other witnesses.

The first portion of the attesting clause down to, and including the word "names," is written across the sheet, the remainder of it is written to the right of the bracket at the end of the names of Halsey and Hart.

The question is, in what condition was this attestation clause when signed by any two of the witnesses? If it ended with the word "names," it would not show compliance with the statute, in that it does not state that the signatures of the witnesses were made in the presence of the testator. If it included the words "in his presence," the certificate would show that the requirements of the statute were complied with, although it did not recite that the witnesses were both present at the same time. There being but one signature, the fact that both saw the testator sign sufficiently shows the presence of both at the making of that signature. *In re Kirkpatrick*, 7 *C. E. Green* 463; *Mundy* v. *Mundy*, 2 *McCarter* 290.

Halsey and Hart were both dead at the time of the trial. Halsey died in 1857—one year prior to the death of the testator. His signature only is proved. Hart died in February, 1871. He had been examined as a witness three times in the litigations in New York, in 1858, 1861 and 1867. His testimony, given in 1858 and 1867, was before the court. Tatham is still living and his testimony was obtained by deposition.

Tatham testifies that his signature was made at his own house, 107 East Broadway; that Hart was not present; that the testator came to his house with a gentleman, whose name

he does not recollect, but whose person he remembers well; that the testator did not sign the paper in his presence; that he acknowledged his signature, and directed the witness where to sign; that the witness did not see the names of Halsey and Hart, and did not read the attestation clause, and that if he had read it he would not have signed it, for the reason that what it states was not true. Hart testifies that the will was signed by the testator, and attested by him and Halsey, at No. 8 Burling Slip, and that Tatham was not then present.

It is probable that the testator intended to re-execute the will in the presence of Tatham and the other gentleman then present. But what was then done did not amount to a valid re-execution. No publication of the instrument as a will was then made, nor was its execution attested as witnesses by the two persons then present.

But the signature of Tatham is not necessary to give the instrument effect as a will, if it had previously been executed in a proper manner before Halsey and Hart, and witnessed by them. The testimony is only important as showing that the instrument expresses the wishes of the testator in the disposition of his property, and that the names of Halsey and Hart were previously affixed. If Hart did not then sign the attestation clause, it is apparent on the face of the certificate that his name, as well as that of Halsey's, had previously been signed.

Recurring then to the alleged execution of the will at No. 8 Burling Slip, which is the material point in the case, Hart testified in his examination in 1867, to the signing of the will at that time, by the testator, and its publication in the presence of himself and Halsey; and to their signatures at that time to it, as witnesses, in the presence of the testator. He does not recollect whether that portion of the attestation clause, which is to the right of the bracket, was there or not at that time. A close and careful examination of the attesting clause leaves no doubt in my mind that the clause was then completed as it now stands. The whole certificate is in the handwriting of Halsey. The sameness of the color of the

ink, the perfect uniformity in the writing, and the manner in which the signatures and address are crowded in to the left of the bracket, are occular demonstrations that the whole clause was written at one time, and there is no proof in the case to the contrary.

If the attestation clause was in its present condition when the signatures of Halsey and Hart were made, its effect as *prima facie* proof of the due execution of the will, was not overcome by the testimony of Hart before the surrogate of New York, in 1858. His evidence at that time, only shows a want of recollection that is not sufficient to disprove the statements in the certificate of attestation.

The testimony of Hart before the surrogate, in 1858, was offered by the plaintiffs to discredit the evidence he gave at the trial in 1867, in which he testified in explicit terms, to the circumstances of the execution of the will. The explanation he then gave of the fullness of his recollection as compared with his want of recollection in 1858, was quite natural and not unreasonable. He says, that it had been upon his mind for years; that since that time, he had given thought to it, and that certain little things had come up to his recollection which he did not think of then.

The will was signed in October, 1850, and the examination of Hart before the surrogate was eight years afterwards. His examination shows how completely the transaction had then gone from his memory. He recollected nothing but that he witnessed a paper for the testator at his request, which the testator called his will. A controversy immediately arose and an appeal was taken to the Supreme Court. He was a witness at the trial of the issue before Judge Davis, in 1861. The testimony produced by the defence was given in 1867. That in the eight years which elapsed between his witnessing the will and the first time his attention was afterwards called to it, he should have forgotten the transaction, is a circumstance of very usual occurrence. That his recollection should have been refreshed by the discussion and agitation of the questions by subsequent litigation, and that he subsequently

should have been able to recall the facts and give a detailed account of the events, is not surprising. It frequently happens so with witnesses of unexceptionable integrity. His character as a witness was not impeached by proof of a want of truthfulness. Nor does it appear that he had the least interest, personal or pecuniary, in the controversy that might be supposed to warp his testimony, much less to induce him to invent the occurrences he testifies to.

A careful consideration of the case has led me to the conclusion that there should be a new trial. The value of the property in controversy, is quite large. The defendant did not have the benefit which the law gave her of the probate of the will before the surrogate of the county. The attestation clause, on its face, apparently perfected, when signed by a sufficient number of witnesses, and not disproved, recites everything that was necessary to the formal execution of the will, and is sustained by the affirmative evidence of one of the subscribing witnesses, who is not contradicted or impeached, except by his failure of memory when he first testified on the subject.

These circumstances make it eminently proper that the case should be submitted to another jury.