TAPPEN, appellant, *vs.* DAVIDSON, respondent.

27 459
50 439
50 727

1. The effect of the statement in the attestation, that the will was signed in the presence of the testator, is to throw the burden of proving that it was not so signed, upon the opponents of the will.

2. Where it is, at most, doubtful on the evidence, whether the will was not signed in testator's presence, the presumption arising from the statement of the attestation clause is not overcome.

On appeal from Hudson Orphans Court.

*Mr. Lupton* and *Mr. Joel Parker*, for appellant.

*Mr. C. H. Winfield*, for respondent.

THE ORDINARY.

The question presented on the hearing of this appeal was, whether the paper propounded as the last will and testament of John W. Fisher, deceased, was signed by the attesting witnesses in the testator's presence. At the signing of the will, the testator was lying in bed, in a small room which adjoined a larger one, from which it was separated by a partition, in which were a door and a small window. The testator signed the will, in the presence of the witnesses, as he lay in bed. They signed in the large room. In that room, there were a table and a desk. At the latter, the will was drawn. The person who drew it was a New York lawyer, Mr. Franklin Brown. This gentleman and Ole Erckson were the witnesses to the signing of the will by the testator. If the witnesses signed at the table, the testator could have seen them. If they signed at the desk, he could not. The attestation certificate states that the witnesses signed in the presence of the testator. Mr. Erckson, when the will was proved before the surrogate, made affidavit that he and Mr. Brown signed their names as witnesses in the presence of the testator. On the trial of the appeal before the Orphans Court, Mr. Erckson,

when first examined, testified that he and Mr. Brown signed at the desk.  He subsequently returned to the witness stand to say, and then said, that he might have signed it at the table.  Mr. Brown, in like manner, testified that he was not sure whether he signed it at the table or the desk, but that his best impression was, it was at the latter.  He also was subsequently examined again, and testified that the more he thought upon the subject, the more he was inclined to believe that he signed at the table, and not at the desk, but that he could not swear positively that he signed at the table, but believed that he did, and that his best recollection would be that he signed at the table.  There were in the rooms, besides Mr. Brown and Mr. Erckson, the wife of the latter, the widow of the testator, Mr. Tappen, one of the devisees named in the will, and the testator's son, John Fisher.  Both Mrs. Erckson and Mrs. Fisher testify positively that the witnesses signed at the table, while, on the other hand, John Fisher testifies, with equal positiveness, that they signed at the desk.  Tappen says he cannot say positively that he saw the witnesses sign.  The effect of the statement in the certificate of attestation that the will was signed by the witnesses in the presence of the testator, is to throw the burden of proving that it was not so signed, upon the opponents of the will. *Mundy* v. *Mundy*, 2 *McCarter* 290; *Allaire* v. *Allaire*, 8 *Vroom* 312; *Wright* v. *Rogers*, 1 *L. R. P. and D.* 678.  The question, therefore, is whether the negative proposition is proved.  Though both of the subscribing witnesses testified, in the first place, in their examination in the Orphans Court, that according to their recollection, (and eight months had elapsed after the will was signed before they were examined in the Orphans Court), the signing took place at the desk, yet neither of them had a positive recollection on the subject.  Erckson swore, in the affidavit above mentioned, on the 3d of March, 1875, less than two months after the signing of the will, that both witnesses signed in the presence of the testator.  Mrs. Erckson, who has no interest in the controversy, and Mrs. Fisher, the testator's widow, both swear positively that the witnesses signed at the table.  Opposed to

them, is the testimony of John Fisher, who, though he had testified in the cause on the part of the appellant below, was recalled by them after the testimony in the cause had been closed, and the cause had been summed up by counsel and submitted to the court, and was under consideration accordingly. No reason is given for not having examined the witness on the subject, while the taking of the testimony in the cause was in progress. There is nothing in his testimony which entitles him to greater credit than Mrs. Erckson and Mrs. Fisher. It is suggested that he is testifying against his interest, according to the will. But that is obviously not a criterion to be absolutely relied on, and is at least not conclusive in his favor as against two other unimpeached witnesses, who had equal opportunity of observation with him. His actual interest in the controversy may not appear. But however that may be, the evidence does not show conclusively that the will was not signed by the witnesses in the presence of the testator. Says the judge, (Lord Penzance,) in *Wright* v. *Rogers,* " the court ought to have, in all cases, the strongest evidence before it believes that a will, with a perfect attestation clause, and signed by the testator, was not duly executed, otherwise the greatest uncertainty would prevail in the proving of wills; the presumption of law is largely in favor of the due execution of a will, and in that light a perfect attestation clause is a most important element of proof." In that case, the testator signed his will in the presence of two witnesses, an attorney and his clerk, whose names were written at the foot of a full attestation clause. After the death of the testator, an affidavit was required as to certain interlineations which appeared on the face of the will, and such affidavit was prepared by the clerk, on a printed form, the blanks being filled in by him. This affidavit was sworn to by the attorney, and contained the usual clause of due execution ; more especially, that the witnesses had signed their names in the presence of the testator. After the death of the attorney, the clerk, for the first time, gave information that the will was not signed by the witnesses in the presence of the testator, (who, at the

time of signing the will, was at his house,) but in the attorney's office, and at the trial gave evidence to the same effect. No other witness, to corroborate or disprove the statement, was produced. The court, on review of all the circumstances, declined to act upon the recollection of the surviving witness, and decreed probate of the will as having been duly executed. In the case before me, the testamentary witnesses, when examined eight months after the signing of the will, were in doubt as to whether the will was or was not signed at the table, which was in sight of the testator. Two other witnesses, who were present, testified that the testamentary witnesses did, in fact, sign at the table, while another swore that they signed at the desk. At most, it is doubtful on the evidence whether the will was not signed at the table, and under such circumstances, the presumption arising from the statement of the attestation clause is not overcome.

The decree of the Orphans Court will be reversed.