OF

## THE STATE OF NEW JERSEY.

### FEBRUARY TERM, 1898.

ALEXANDER T. McGILL, ORDINARY.

ABRAHAM V. VAN FLEET, VICE-ORDINARY.

HENRY DARNELL, guardian of Joshua W. Hurley, appellant,

v.

MARK H. BUZBY, SAMUEL T. ENGLE et al., respondents.

1. When enough is said or done, in the presence and with the knowledge of the testator, to give the witnesses to understand distinctly that the testator desires them to know that the paper produced is his will, which they are to attest as such, the statutory requirement, that a testator shall declare his will in the presence of witnesses, is sufficiently complied with.

2. That which is said or done must plainly lead to the single necessary inference that the document executed is the testator's will.

[725]

Darnell *v.* Buzby.

3. Equivocal acts and words, which are fairly susceptible of a meaning inconsistent with will-making, will not be a sufficient declaration of a will, though they be supported by a perfect attestation clause, the contents of which were not made known to both witnesses.

On appeal from a decree of the Burlington orphans court.

*Mr. Samuel H. Grey,* for the appellant.

*Mr. Eckard P. Budd* and *Mr. Mark R. Sooy,* for the respondents.

THE ORDINARY.

The decree appealed from affirms an order of the surrogate of Burlington county, which admits to probate the will of Mary M. Wilkins, from which an appeal was taken to the orphans court.

The appellant is the guardian of the grandson of the testatrix, who is her next of kin and only heir at law.

The ground of appeal is, that in the execution of the will certain formalities prescribed by the statute (*Rev. p. 1247 § 22*) were not observed. The formalities prescribed, applied to the will of a female, are : (1) that the will shall be in writing; (2) that it shall be signed by the testatrix ; (3) that the signature of the testatrix shall either be made or acknowledged by her in the presence of two witnesses who shall be present at the same time ; (4) that the writing shall be declared by the testatrix to be her last will, in the presence of those witnesses, present at the same time as aforesaid, and (5) that the two witnesses shall subscribe their names thereto in the presence of the testatrix.

It is admitted, that the will is in writing ; that it is signed by the testatrix and that two witnesses, present at the same time, subscribed their names thereto in her presence ; but it is denied that the testatrix either signed the will or acknowledged her signature thereto or declared the paper to be her last will, in the presence of those witnesses.

The present inquiry is thus reduced to these two questions : Did the testatrix sign her will or acknowledge her signature to

it in the presence of the witnesses? Did she declare the writing to be her will?

The attestation clause recites particulars which assert complete obedience to all the requirements of the statute, and, the signatures of the witnesses being admitted, that clause makes *prima facie* proof of all the facts stated in it. *Mundy* v. *Mundy, 2 McCart. 290; Allaire* v. *Allaire, 8 Vr. 312; S. C. on error, 10 Vr. 113; Tappen* v. *Davidson, 12 C. E. Gr. 459; Mandeville* v. *Parker, 4 Stew. Eq. 248; Turnure* v. *Turnure, 8 Stew. Eq. 437; Patton* v. *Hope, 10 Stew. Eq. 592; McCurdy* v. *Neal, 15 Stew. Eq. 333; Ayres* v. *Ayres, 16 Stew. Eq. 569.*

By this clause the burden of proof is thrown upon the contestant to negative its averments, upon the points in dispute, by strong and convincing evidence.

In *Wright* v. *Rogers, L. R. (1 Pro. & Div.) 678,* in pronouncing the judgment of the court, Lord Penzance said: "The court ought to have, in all cases, the strongest evidence before it believes that a will, with a perfect attestation clause and signed by the testator, was not duly executed, otherwise the greatest uncertainty would prevail in proving wills; the presumption at law is largely in favor of the due execution of a will, and in that light, a perfect attestation clause is a most important element of proof."

The rule thus enunciated is fully recognized by the courts of this state. *Allaire* v. *Allaire, supra; Tappen* v. *Davidson, supra.*

There were four persons present at the execution of the paper in question: Samuel T. Engle, the draughtsman of the instrument, whose two daughters are residuary legatees and devisees of one-half of the estate, and who, himself, is one of the executors of the will, takes a legacy of $1,000 under it and is indebted to the estate of the testatrix in the sum of $1,800; Deborah Buzby, who on the day of the execution of the paper was a visitor at the house of the testatrix, and Amos L. Haines, who for several years had been employed to work the farm upon which the testatrix lived, and who occupied a portion of the

·dwelling of the .testatrix, maintaining therein a separate estab-
lishment in the part of the house assigned to him.

·: It is undisputed that the will was prepared according to the
·direction of ·Mrs. Wilkins ;· that on the day of its execution Mr.
:Engle came to her residence about, noon, while she and Mrs.
'Buzby were dining in one part of the house and Amos Haines
was at his dinner· in his apartments, bringing with· him the will ;
·that when Mr. Engle came Mrs. Wilkins left the dinner..table
and ·received him in .her sitting-room, where· she remained with
him alone some minutes, during which she and .Engle read and
discussed the.will ;· that she then called Mrs. Buzby and Amos
·Haines into the sitting-room, and that .no part of either the will
·or the attestation clause· was read in their presence.      .·.

Mrs. Buzby states that when she entered the sitting-room Mr.
·Engle said to her that she was wanted to "sign a paper," and
' Mrs. Wilkins remarked that she (Mrs.Wilkins) was "changing her
writings ;" that when she, Engle, Haines and the testatrix were
together, the testatrix signed the paper, which was lying on a
table, making the remark that she was about to "change some
writings—make some changes ;" that thereupon Mr. Engle
handed the witness a pen and said that Aunt .Mary had been
·"changing her writings," and added something more which the
witness cannot now remember ; that she then said to Amos Haines
'that "it wasn't best to sign papers when you didn't know what
you were doing," and Engle remarked that it was something that
she would never be called on for.   The witness adds that the cir-
·cumstances of the transaction led her to suppose that a will was
·being executed, but that she does not think that the word "will"
·was used.

Amos Haines, who is fifty-four years old, testifies that when
· he was called the testatrix said to him, "I wish you to sign some
, writings ;" that he did not see the testatrix sign the will ;· that
· when he entered the room the testatrix asked him if .he would
·"sign her writings," and he ·replied, "Yes ;" that he did not
·know what he was signing ; .that he had signed papers before·to
· accommodate. the· testatrix, such as· writings for buying .stocks,
notes and the like, and that he signed the paper in question with

similar purpose; that he did not know or suppose the paper to be a will; that when he signed he did not have his eye-glasses and it was with difficulty, Engle assisting him, that he wrote his name; that he was unable to read and did not read that which was written over his signature and that no part of the writing was read to him; that nothing was said either by Engle or the testatrix which indicated to him that the paper was a will; that he was never before present at the execution of a will; that the testatrix did not either declare the paper to be her will or ask him to witness it; that Mrs. Buzby said to him, that it was not prudent for them to sign what they "did not know about," and that Engle replied that it would not interfere with them.

Samuel T. Engle testifies that when the witnesses had entered the room he, holding the pen in his hand, told them, adopting his language, "Aunt Mary had been making a change in her writings and according to law there had to be two witnesses to her signature," and that then Mrs. Buzby said: "It is not well to sign a paper you do not know what is in it," and that he replied that he "guessed she would not be called on again or something that way—she needn't worry herself about it." He also testifies that the witnesses and testatrix signed in the presence of each other; that he and the testatrix were accustomed to speak of wills as writings, but that he never heard others so call them, and that he did not so speak of them before to Mrs. Buzby.

The preponderance of proof is that Mrs. Wilkins signed the will in the presence of the two witnesses. The attestation clause affirms it and Mrs. Buzby and Mr. Engle testify most positively to the fact, hence that formality must be regarded as established, notwithstanding the testimony of the witness Haines to the contrary.

The real difficulty in this case is with the question whether Mrs. Wilkins declared the paper to be her will, in the presence of the witnesses.

It appears to be beyond dispute that there was no express declaration to that effect. But such a declaration is not necessary. In *Mundy* v. *Mundy, supra,* Chancellor Williamson, sitting as ordinary, said: "There must be some declaration by the testa-

tor that it was his will, and a communication by him to the witnesses that he desired them to attest it as such. But this need not be done by word. Any act or sign by which that communication can be made is enough. The scrivener in the presence of the testator says, this is the will of A. B. and he desires you to witness it—the testator standing by, is a sufficient publication or declaration. The form is immaterial. But the witnesses must know it is the will of the testator they are witnessing, and they must witness it at his request." *Turnure* v. *Turnure, supra; McCurdy* v. *Neal, supra; Ayres* v. *Ayres, supra; Ludlow* v. *Ludlow, 9 Stew. Eq. 597; Elkinton* v. *Brick, 17 Stew. Eq. 154.* In the last of these cases, I stated the law to be as I now understand it, that it is a sufficient compliance with the statute when enough is said or done, in the presence and with the knowledge of the testator, to give the witnesses to understand distinctly that the testator desires them to know that the paper is his will and that they are to attest it.

Now, in the present case, we have these facts known to both Mrs. Buzby and Haines; that two witnesses were required; that the testatrix called the will "her writings," in which she declared she was making changes, and that Engle superintended the execution of the paper. Mrs. Buzby, in addition, knew of the coming of Engle and his previous private interview with the testatrix. Those facts suggested to her mind that a will was in process of execution. She "supposed" the paper to be a will. She was without certain knowledge on the subject. Her conclusion was the product of inference. That conclusion was certainly not strengthened when, as she sat down to sign the paper, she hesitatingly said to Haines, who waited to sign after her, that it was not well for him and her to sign papers when they did not know what they were doing, and at that crisis neither Engle nor the testatrix explained what the paper was, but, as if purposely concealing its character, assured her that it was "*something*" which would not hold her to responsibility. Amos Haines, the other subscribing witness, was a farmer, evidently not so thoughtful and observant as Mrs. Buzby. He had never before witnessed the execution of a will. The testa-

Darnell *v.* Buzby.

trix was his employer. It was not fitting that he should be inquisitive regarding her affairs, especially after Mrs. Buzby's remark had failed to elicit a satisfactory disclosure. Besides, his prior experience in signing other writings for his mistress had not involved him in trouble, and hence fear of liability or other misfortune did not excite him to either open inquiry or mental speculation as to the distinctive character of the writing. Constrained by his position and experience and possessed of duller faculties than Mrs. Buzby, he signed the document without knowledge and without even reaching a satisfactory inference or conjecture as to its character.

Taking as true the statement of Mr. Engle, which is denied by Haines, and the latter part of which Mrs. Buzby fails to remember, that, with pen in hand, he announced to the witnesses that Mrs. Wilkins had been making a change in her writings, and that the law required two witnesses to her signature, is the case stronger? The expression "change in her writings" possibly might lead to inference that the writing was a will, but the accompanying announcement that the signature and not the act of will-making was to be witnessed, appears to be calculated to destroy that mental inclination. It is to be noted that this witness differs from both of the subscribing witnesses in his statement of the remark made by Mrs. Buzby when she hesitated to sign. The subscribing witnesses say that her objection was to sign when she did not know what she was doing, but Engle puts it that the objection was to signing without knowing what was in it—that is, the contents of the paper. But it is to be observed that Mr. Engle does not substantially differ from the subscribing witnesses in stating his reply to Mrs. Buzby's remark. He says that his reply was that she would not be called on—she need not worry herself about it. The evident design of that answer was to allay apprehension of responsibility, not to curb curiosity. It was a reply addressed to one who did not understand the character of the document, rather than to one who wished to be informed as to its terms. I apprehend that Mr. Engle does not mean to suggest by the language in which he clothes the statement of Mrs. Buzby, that her remark was the product of curi-

osity rather than of ignorance of the effect of the paper she was asked to sign and apprehension of harm, and that his testimony therefore does not substantially conflict with the testimony of the subscribing witnesses upon this point.

From all the witnesses who were present at the transaction, then, we have a full statement of that which transpired, which not only fails to show an express declaration of the will, but exhibits that the matter relied upon as an implied declaration was indecisive of the character of the paper, affecting the witnesses differently. It led one to a correct inference but failed to impress the other sufficiently to lead him to any mental inquiry as to its character.

Here I may properly say that I have considered the animadversions upon the testimony of the witness Haines without being persuaded that he deliberately perjured himself or was sufficiently debased to do so. He has been contradicted, but that may have been the consequence either of his stupidity or of honest mistake through lack of observation or memory. The crucial point in his testimony is as to the operation of his mind at the very time when the will was executed. Did he then draw the same inference that Mrs. Buzby drew? He gave no indication of his mental operation at that time, and now, he alone can tell what it was. I can understand that circumstances might be so plain that I would not be able to reconcile a witness' denial of such an inference or implication with truth. For instance, if the will, or even the attestation clause, had been read or he had been requested by the testatrix shortly before to attest the execution of her will, his denial that he knew that a will was being executed could hardly have credence. But here such circumstances do not exist, the circumstances with which we deal not only failed to disclose the character of the paper he was called upon to sign, but forbade him to inquire concerning its nature, and invited as to that character only uncertain deductions. Unless a witness is most clearly shown to be utterly unworthy of belief, his positive testimony must stand against even a perfect attestation clause which, under disclosure of all that was said and done, is supported solely by equivocal acts

and words which are fairly susceptible of a meaning inconsistent with the act of will-making. And especially is this the case when it appears that the witness knew nothing of the contents of that attestation clause. To serve as a sufficient substitute for express declaration, that which is said and done should plainly lead to the single necessary inference that the document executed is the testator's will. The character of the paper should distinctly appear to the witnesses. *Elkinton* v. *Brick, supra.* Mr. Justice Scudder, in writing the opinion of the court of errors and appeals in *Ludlow* v. *Ludlow, supra,* after stating that declaration of a will need not be by the testator's own words, said : "But he must by word or sign clearly indicate his recognition of the testamentary act" &c.

I feel compelled to conclude that it does not appear that the testatrix declared her will in conformity with the requirements of the statute. This conclusion leads to the rejection of the instrument.

The decree of the orphans court will be reversed.