# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY.

FEBRUARY TERM, 1898.

---

ALEXANDER T. McGILL, ORDINARY.

---

THOMAS H. STEWART

*v.*

CORNELIA G. STEWART and CHARLES F. STEWART.

[Filed May 25th, 1898.]

1. Evidence that a testator took his will, a holograph, to two old friends, who were familiar with his signature, and, exhibiting it to them, said, "This is my will; do you recognize the signature as mine?" and that, on their answering him in the affirmative, he asked them to sign the will as witnesses, is sufficient to show that the testator acknowledged his signature to such witnesses.

2. While, in the absence of any attestation clause to a will, the burden is on the proponent to affirmatively prove compliance with all the statutory requirements, yet evidence that an attestation was made in the same room where the testator was is *prima facie* proof that the attestation was in his presence.

3. The fact that a witness who testified positively as to certain matters, when first interviewed before the trial concerning them, was uncertain and without distinct present recollection, does not destroy his credibility.

———

On appeal from a decree of the orphans court of Passaic county, which admits to probate a paper purporting to be the last will and testament of Thomas C. Stewart, deceased.

*Mr. Thomas F. Noonan, Jr.,* for the appellant.

*Messrs. Miller & Meyers,* for the respondent.

THE ORDINARY.

Thomas C. Stewart died in May, 1897, at the age of eighty-one years, leaving him surviving his wife, Cornelia, and two sons by a former wife, Thomas and Charles. He resided for many years, until his death, in the city of Passaic, in this state.

The paper in question bears date the 25th of June, 1894, and was admitted to probate by the surrogate of Passaic county shortly after Mr. Stewart's death. The son Thomas appealed from the surrogate's probate to the orphans court, and, on the 29th of October, 1897, that court made the decree now under review, which admits the paper to probate.

The widow and younger son, Charles, are appointed respectively the executrix and executor of the will and are directed to hold portions of the estate in trust for the elder son, Thomas, with power in them to terminate the trust in their discretion, upon being satisfied of particulars indicated in the instrument.

The admission of the disputed paper to probate as the will of Mr. Stewart is resisted by the son Thomas upon the insistence that it is the product of undue influence and was not executed with all the formalities required by law.

The proofs do not justify the first of these positions. They at best show strained relations between the elder son and his brother and stepmother, and the existence of a strong fatherly affection for Thomas upon the part of the testator. The strength of the appellant's case, upon the point considered, rests in these facts, coupled with the tying up by the will of his portion of the

Stewart v. Stewart.

estate in trust in the hands of his stepmother and brother. The proofs do not show the least intermeddling by anyone in the production or execution of the will, or even that any other person than Mr. Stewart and the subscribing witnesses to the will knew of the existence of that instrument. They do, however, indicate, through the character of the physical afflictions with which Thomas suffered and his frequent application to his father for assistance, that perhaps the trusts created were provident.

The burden was upon the contestant to show undue influence, or, at least, such *indicia* of undue influence as to shift to the proponents the burden of showing that undue influence did not exist. He did not bear his burden.

The testator was a lawyer, though not in active practice; was in full possession of his faculties, careful and self-reliant. I cannot find any justification for believing that he was constrained to make the instrument considered contrary to his own judgment and wishes and in obedience to the purpose of others.

Thus, dismissing the first ground, I come to the questions raised with regard to the execution of the instrument. Upon this subject the insistence is, first, that the testator did not sign the will or acknowledge his signature to it in the presence of the subscribing witnesses, and second, that the witnesses did not subscribe their names to the will in the presence of the testator.

The will is a holograph, without an attestation clause. The subscribing witnesses were a gentleman, named Church, and his wife. They lived in the city of Passaic, across the street from Mr. Stewart, and had purchased their home from him. They had known Mr. Stewart for years.

On a Sunday afternoon in June, 1894, Mr. Stewart crossed the street to their house, and was admitted by Mr. Church. He told Mr. Church that he had a little business to transact with him and his wife, and asked if it would be convenient for them to then attend to it. Mr. Church invited him into a small library-room, and called Mrs. Church from an upper story of the house. When Mrs. Church came down stairs and the three were alone together, Mr. Stewart said that while he had

no intention to die, he thought it proper to prepare for that event, and had drawn his will which he desired them to witness, and then took from his pocket the paper now in dispute, and asked. Mr. Church if he could recognize his (Stewart's) signature, and, exhibiting his signature to the instrument, said : " This is my will. Do you recognize the signature as mine?" And when Mr. Church replied in the affirmative, asked him if he would sign the will as a witness. He then repeated the same formality with Mrs. Church. Upon cross-examination, Mr. Church, in one place, testifies that Mr. Stewart said that he (Stewart) had signed the will, but in all other parts of their testimony treating of this point, both he and Mrs. Church say that Mr. Stewart asked for their recognition of his signature in that which he exhibited to them, and then requested them to witness the will. A question much mooted is whether such language and conduct is a sufficient acknowledgment of the testator's signature within the requirement of the statute. My conclusion is that it is. There was a declaration by the testator that the paper was his will. That paper, in point of fact, was signed by him, and that signature was the name he pointed out to the witnesses and asked if they could recognize it. He and the witnesses had been acquaintances for years. The witnesses were familiar with his signature. When he pointed it out and asked them if they recognized it as his, upon their identification of it, he, in conduct, assented to the correctness of that identification by proceeding to another step in the execution of the will; asking them to sign it. Such assent upon his part to the conclusion of the witnesses was, I think, an acknowledgment of the signature. It was not necessary that the acknowledgment should be in words. It was sufficient if accomplished by unequivocal conduct upon his part. *Ludlow* v. *Ludlow, 9 Stew. Eq. 597, 601.*

When the witnesses subscribed the will they went to a secretary against the wall on one side of the room, taking the will with them, and there, in presence of each other, subscribed their names to it. Mr. Stewart, at that time, sat or stood in the same room, a very few feet away from them. Both witnesses believe

that Mr. Stewart faced them and looked at them as they signed. Mr. Church says that he saw Mr. Stewart look at Mrs. Church when she signed.

Here it is insisted that the proof is uncertain upon this point, and that in the absence of reference to it in an attestation clause, the uncertainty is fatal to the instrument.

It is undoubtedly the rule that in the absence of an attestation clause the burden is upon the proponent of a will to establish by affirmative proof obedience to the statutory requirements. *Allaire* v. *Allaire, 8 Vr. 312, 325.* But, at the same time, it is the rule that an attestation made in the same room where the testator is, is, *prima facie,* an attestation in his presence. *Manderville* v. *Parker, 4 Stew. Eq. 242 ; Ayres* v. *Ayres, 16 Stew. Eq. 565.* The testimony in this case is clear that Mr. Stewart was in a small room with the witnesses when they subscribed the will ; so near that with the least attention he could have seen them sign, and that, as already stated, he was a lawyer by profession, hence presumably versed in the importance of seeing them sign, and, as well, was in full enjoyment of his faculties. This *prima facie* proof has not been overcome.

Shortly after the death of Mr. Stewart, which, it is remembered, happened three years after the execution of the will, the appellant's lawyer, with a friend, called upon Mr. Church at the bank in New York City, with which Mr. Church is connected, and there sought to draw from him his recollection of the particulars of the execution of the will. It appears that he was in some uncertainty as to those particulars. That which he now testifies to with certainty was then apparently an uncertain impression. This fact is urged against his credibility, but I do not attach much importance to it. Mr. Church appears to be a man of most excellent character. When he was called upon at the bank he was unexpectedly plunged into the *minutiæ* of a transaction that had happened more than three years before. Nothing was then presented to refresh his recollection. It could scarcely be expected that before he had an opportunity to think with deliberation upon the matter he could declare any fact with positiveness. Indeed, I cannot but think that the general cor-

rectness of his recollection, evidenced in the uncertain expressions he then uttered, exhibits a memory well worthy of confidence, when refreshed by consideration and conference with Mrs. Church.

I will affirm the decree of the orphans court.