OF

## THE STATE OF NEW JERSEY.

### MAY TERM, 1903.

————————————

WILLIAM J. MAGIE, ORDINARY.

ALFRED REED, VICE-ORDINARY.

————————————

In the matter of the application for probate of the last will and testament of JACOB G. BERDAN.

[Filed June 30th, 1903.]

1. A paper-writing, produced and offered for probate as a will, is shown to have been written and signed by the testator. It has a complete attestation clause appended, also in the handwriting of testator, and beneath that clause are the admitted signatures of two competent witnesses.—*Held*, that a presumption of due execution is thereby raised, which will require the admission of the paper to probate, unless overcome by strong and convincing evidence.

2. Both of the subscribing witnesses, when called, while admitting the genuineness of their signatures, testify that the paper was not signed by testator, nor the signature thereto acknowledged by him, in their pres-

ence, and that their signatures were not made at the same time or in the presence of each other. Although the evidence of one witness was open to serious question affecting his recollection of the transaction, the evidence of the other witness being found credible, and to establish that he did not see the attestation clause or know its contents, and that the statements therein certified were not in fact true—*Held*, that the presumption arising from the attestation clause was overcome, and that probate should be denied.

Mr. *Milton Demarest,* for the proponent.

Mr. *Gilbert Collins,* for the Hackensack Hospital, a legatee.

Mr. *John W. Harding,* for the caveators.

MAGIE, ORDINARY.

The paper-writing offered for probate as the last will and testament of Jacob G. Berdan, who died in the city of Paterson, December 26th, 1902, is shown by the evidence, and conceded by counsel for the caveators, to have been written by the testator himself, whose genuine signature is thereto appended. There is appended to the will, and also written by the testator, an attestation clause, certifying to an execution by the testator, in all respects in conformity with the provisions of our statute of wills respecting the execution of such instruments. Below the attestation clause appear the signatures of two persons, Albert Bogert and Albert H. Blauvelt. These persons have been produced as witnesses and each testifies that his signature was made by himself.

Proof that testator signed this instrument and that two persons signed this attestation clause, raises a presumption of the due execution thereof as a testamentary disposition of property, which will permit and require its admission to probate. The burden of proof is thereby cast upon the contestants, who must, to justify its rejection, negative its averments by strong and convincing evidence. *Darnell* v. *Buzby, 5 Dick. Ch. Rep. 725,* and cases therein cited; *S. C., 7 Dick. Ch. Rep. 337; Hildreth* v. *Marshall, 6 Dick. Ch. Rep. 241; Swain* v. *Edmunds, 8 Dick. Ch. Rep. 142; S. C., 9 Dick. Ch. Rep. 438.*

The caveators are children and heirs-at-law and next of kin of the deceased.

It is first contended in their behalf that, upon the face of the will, the attestation clause is shown to be untrue or ineffective. The first of these contentions is that the will could not have been signed in the presence of the witnesses, and that the attestation clause does not certify that the signature was acknowledged by the testator in the presence of the witnesses. Passing the question whether the statute, which requires signing in the presence of the witnesses, or that the signature should be made or acknowledged in their presence, is not satisfied by a certificate that the will was signed, it is sufficient to dispose of this contention to say that it is not raised upon any admissible fact. Testator undoubtedly wrote the whole will and the signature. The writing was done with a pen evidently differing from that used by the witnesses. But that circumstance does not indicate that the signature was necessarily written at the time the body of the will was written. It may well have been written at the time the witnesses wrote their names, and if written with the same pen which the testator used in writing the body of the will it would present the exact appearance that it does. The proofs show that testator was accustomed to use a fountain pen, and writings and signatures made by him with such a pen have been put in evidence. They resemble in all respects the body of the will and the testator's signature. It is further proved that testator carried such a pen and, when he needed to write, would take it from his pocket rather than use other pens. There is nothing on the face of the will to indicate that he may not have done so in the presence of the witnesses.

It is further contended that the certificate in the attestation clause is ineffective, because below the last words of the clause was written, in testator's handwriting, the word "witnesses," and it is contended that the certificate of the two witnesses must be taken as limited to what is included in that word and not to the details of signing and publishing the will. But I am unable to yield to this contention. The word "witnesses" is written to the left and not over the signatures of the witnesses. It is evidently

intended by the writer to indicate the place where the witness should sign his name and could not have been taken by the witness as limiting the force of the certificate to which his signature was in fact appended.

This compels the consideration of the evidence before me and a determination whether it justifies the court in admitting the paper to probate.

As before stated, the proof is plenary that the will has the signature of the testator appended to it in his own handwriting, and that a proper attestation clause is also appended, to which the two witnesses have made their signatures in their own handwriting. This raises a presumption of due execution, which presumption, however, may be overcome by due proof. Unless overcome, it will require and support a decree for probate.

The contention of caveators is that the presumption is overcome by the evidence of the two persons who placed their names at the foot of the attestation clause as witnesses. The particular contention is that, by their evidence, the certificate is shown to be untrue in two respects, (1) that it untruly certifies that the will was signed in their presence, while, in fact, it was neither signed nor the signature acknowledged by the testator in their presence, or the presence of either of them; and (2) that they were not together at the time when they appended their signatures to the attestation clause, but that each appended his signature thereto at a different time and a different place.

Both of these witnesses were old friends of testator, and although each knew the other by sight they were not intimate acquaintances. They lived in different directions and each at some distance from the city of Paterson.

The writing bears date December 12th, 1891. After the death of the testator, Mr. Samuel Demarest, Jr., a counsellor-at-law, practicing in Hackensack, N. J., was found to be in possession of an envelope, endorsed in the handwriting of the testator, with these words: "The last will and testament of Jacob G. Berdan, December 12, 1891." Upon being opened, the envelope was found to contain the instrument now offered for probate. Mr. Demarest, the custodian, was called as a witness and testified

that the envelope had been deposited with him for safe-keeping by the testator himself, but he was unable to fix the exact date of such deposit, though his statement would indicate that the time of the deposit was approximately near to the date of the instrument and the date on the envelope.

Albert Bogert, whose signature on the paper in question first follows the attestation clause, was called as a witness by the proponents.   Upon their examination, he testified that his signature was made by him and at the request of the testator. Upon cross-examination on the part of caveators, and upon further examination by the counsel of proponents and the counsel of the legatee, he stated the circumstances under which his signature was made in the following manner: He testified that his signature was written at a place called Wickoff, which is a station on the New York and Susquehanna railroad, in Bergen county, at which place he was upon some official business; that he met testator there, and that testator asked him if he would be a witness to his will, and, upon witness assenting, testator told him to sign it "right down there," and that he thereupon signed his name in the place indicated by testator; that testator was then living at the house of a Mrs. Winters, near Wickoff station; that witness signed his name either at the station or at the Winters' house, at which he took lunch with the testator on that day, and that he wrote his name with a fountain pen furnished by testator.   He further testifies that no one was present when he signed his name except testator and himself; that no one did any writing upon the paper at the time except himself; that testator did not tell him that he had signed the paper; that he did not see testator's name on the paper, and that he did not look at or see what was on the paper.

If Bogert's evidence is entitled to entire credit, it is obvious that it overcomes the presumption arising from the attestation clause, for he was not made acquainted with its contents, and, if his memory of the transaction is to be relied on, the paper was not executed with the formalities required by our statute to make it a testamentary disposition of property.

But his statement of the transaction is so inconsistent with

other facts incontestably proved, and has such discrepancies with itself that the amount of credit which ought to be given to it is open to serious doubt. He had testified that he was at Wickoff on the day in question on some official business as sheriff of the county. But his term of office as sheriff did not coincide with the time at which this document must have been signed. He then stated that he might have been there on some business as a chosen freeholder of the county. When confronted with his sworn statement of his services as freeholder for a period covering that during which this paper was doubtless signed, he failed to indicate any charge for official work which would have required him to go to Wickoff. He was at first clear in his statement that testator was then living at the Winters' house, but it is proved beyond doubt that testator did not go to board at Mrs. Winters' until 1894, and the evidence is convincing that this paper had been deposited with Demarest long before that time. There are other discrepancies, unnecessary to dwell upon.

I do not intend to intimate that his evidence could be rejected as consciously and intentionally false, but only that it indicates lapses of memory, and to such an extent that it might be a question whether his recollection can be relied on, and whether, if standing alone, it would be such convincing testimony as would suffice to overcome the presumption arising from the signed attestation clause. Testimony of one of the subscribing witnesses suggesting doubt, or his own want of recollection of the transaction, will not justify refusal of probate if the other witness corroborates the accuracy of the attestation clause as to execution. *McCurdy* v. *Neall, 15 Stew. Eq. 333.*

But there is other evidence which cannot be ignored. Albert H. Blauvelt, the other subscribing witness, was called by proponents and testified that he made his signature (which is below that of Bogert) at the request of testator. Upon cross-examination and further examination he gave this account of the transaction: He testified that he was in a saloon in the city of Paterson, in which place testator (who was an insurance agent) was accustomed to do business; that this was at a time ten, eleven, or twelve years prior to the time he was examined, and

this would be approximately near the date of the will; that testator asked him to be a witness to his will, and, upon his assenting, testator walked to a desk in the saloon, brought out a paper and folded it; that witness put his name where testator showed him, and then testator picked up the paper and put it in his pocket. He expressly declares that the paper was folded in such a manner that he did not see what was on it; that testator did not sign the paper in his presence, nor did testator say in his presence that he had signed it. While witness admits that somebody, either the bartender or the owner, was at the time in charge of the saloon, and that others were, perhaps, in the place, he testifies that Albert Bogert was not there, and that no person in the saloon was near enough to testator and himself to take part in the transaction. He further states that he casually met testator not long before his death, and that testator remarked that he was a witness to his will, to which witness then assented.

Unless I can find in the proved facts in the cause, or in this evidence itself, ground for rejecting it as incredible, I must give it effect. I can find no ground for rejecting it. The only fact which has raised any doubt in my mind is the singular resemblance in the signatures of this witness and of Bogert, which gives the impression that they were written with the same pen and the same ink. But this circumstance will not in my judgment justify me in finding that Blauvelt does not recollect what he professes to recollect respecting his part in the transaction. As I deem his evidence credible, I am compelled to conclude that this instrument was not executed in the manner required by law, because it was not signed or the signature acknowledged by testator in the presence of two witnesses present at the same time. Any presumption arising from the attestation clause has been overcome by Blauvelt's testimony that he did not see the attestation clause, or knowingly certify to the facts therein stated, and that the facts in the respects above stated are not true.

It results that the probate must be denied. As proponent had in his possession a will perfect upon its face, in the hand-

writing of his testator, duly signed by known citizens attesting its proper execution, it was his duty to present it for probate and to pursue his application. His costs and proper counsel fee ought to be allowed out of the estate of the deceased.