ALVAH J. BLOOM, appellant,

*v.*

JOSEPH L. TERWILLIGER, respondent.

[Decided December 28th, 1910.]

1. Where a will offered for probate contains a formal attestation clause, the burden of proof is thereby thrown upon the contestant to negative its averments upon the points in dispute by strong and convincing evidence.

2. Evidence *held* sufficient to show that a will offered for probate had been published in the presence of the subscribing witnesses.

---

On appeal from a decree of the Essex county orphans court denying probate of the paper-writing purporting to be the last will and testament of Lucinda M. Terwilliger, deceased.

*Mr. Frank Kemble,* for the appellant.

*Mr. Charles B. Gurney,* for the respondent.

WALKER, VICE-ORDINARY.

The court below refused probate upon the ground that there did not appear to have been a publication in the presence of the

subscribing witnesses. And this conclusion, in my judgment, was right, considering the evidence before the court. After the matter had been removed into this court on appeal, the appellant applied to the ordinary and obtained leave to take additional testimony. In pursuance of this order further testimony was taken, consisting largely of a re-examination of the principal witnesses who were sworn and examined before the court below. On this examination May Bloom, the sister and principal beneficiary under the alleged will, who had previously testified that, at the time the will was signed, she did not remember her sister said anything to the witnesses or they to her about the paper; said she then remembered that Mr. McLelland, the draftsman, and one of the witnesses, said to her sister, "Do you declare this to be your last will and testament?" to which she answered, "Yes, I do." She says she did not remember it at the time she testified before the orphans court because she had never been in a court room and was excited.

McLelland testified that he read the will to Mrs. Terwilliger, but that she gave no indication whether she heard or understood the contents; Miss Bloom held her hand and guided it while she signed her name, and he, McLelland, then requested Dr. Whitfield to sign it, which he did, and then he (McLelland) signed it, and they both left.

The judge of the court below put his refusal to probate the will on the ground that the presumption of due execution arising out of the perfect attestation clause, was overcome by the direct testimony of McLelland that publication had not taken place, while the statements of the other two persons present, namely, Dr. Whitfield and Miss Bloom, were that they did not remember anything that amounted to a publication either by word or act.

As the testimony now stands, the stories are different. We now have Miss Bloom saying in the most positive terms that there was publication, while McLelland makes an equally positive declaration that there was not.

Ordinarily, I would say that the belated testimony of Miss Bloom, interested as she is, coming after leaving the stand and conferring with counsel as to further testimony (and this is no reflection on counsel), could not be accepted as against the di-

rect and positive and apparently disinterested testimony of McLelland, but I am prepared to give it the greater weight in this case for the following reasons: McLelland knew the importance of an attestation clause to a will (he says so) ; he made the contents of the document known to the testatrix at the time of its execution, and there arises to my mind a strong presumption that he did not omit so important, and, in fact, controlling solemnity, as to procure a publication before subscribing his name to the attestation clause and thus solemnly proclaiming a falsity over his own signature. Still, he says that is what he did, and, if there were nothing more in the case, I should feel constrained, just as the orphans court did, to refuse probate. I state the matter thus to show that it does not require much to be thrown into scales to change the situation.

As was said by this court in *Darnell* v. *Buzby, 50 N. J. Eq.* (*5 Dick.*) *725* (at *p. 726*): "By this (attestation) clause the burden of proof is thrown upon the contestant, to negative its averments upon the points in dispute, by strong and convincing evidence."

Vice-Ordinary Van Fleet in *Robbins* v. *Robbins, 50 N. J. Eq.* (*5 Dick.*) *742* (at *p. 745*), said he could not conceive how any upright, competent and careful lawyer could, under the special circumstances of the case before him, have allowed so essential a part of the business in which he was engaged, as publication, and which it was his duty to see was successfully done, to be overlooked or omitted. In that case the will was witnessed by a lawyer and a doctor, and the lawyer said there was publication while the doctor said there was not, and the court believed the lawyer and admitted the will to probate. In the case at bar the situation is different, and, while the scrivener is not a lawyer, he is assistant clerk in the office of the clerk of Essex county and has had some experience in the drawing and execution of wills. And, with the evidence of publication now in the case, I am unwilling to believe that he attested this will without its having been duly executed, including publication. I think, when he says it was not published, he is at least mistaken. A circumstance tending to show that Miss Bloom's evidence is more reliable than his, is that Dr. Whitfield said on both of his

examinations that when he entered the room Mrs. Terwilliger inquired for his family and asked him to have Mrs. Whitfield to come over and see her, and Miss Bloom on her first examination said she heard her sister, the testatrix, tell Dr. Whitfield to tell Mrs. Whitfield to come over and see her, and on her second examination she said she heard her sister greet Dr. Whitfield when he came in and asked him how his wife was and told him to tell her to come over and see her. True she tells more of her sister's remarks to Dr. Whitfield on the second examination than she did on the first, but the matter was one of minor importance and the two statements substantially agree. Now, we have both Miss Bloom and Dr. Whitfield stating that on the occasion of the execution of the will Mrs. Terwilliger indulged in conversation with the doctor, while Mr. McLelland says that she did not do so, but said nothing. I think that McLelland is mistaken about this feature of the case, and, that being so, he is liable to be mistaken about the other feature of it. In fact I find that he was mistaken about it.

Another thing: Doctor Whitfield says that either the attestation clause was read or its purport was stated at the time of execution. Although this was before the orphans court, and while I agree with the decision of the orphans court upon the testimony that was before it, nevertheless, I think that this fact may be legitimately used as lending additional probability to what Miss Bloom now testifies to on the subject of publication. What she says she heard may not be literal, word for word, as McLelland stated it, but she doubtless approximates closely what he did say.

Now, Miss Bloom did not say that there had not been any publication, only that she did not remember. She has been recalled, and now says that she does remember; and what she remembers is just what McLelland, in the discharge of the duty he apparently well knew how to perform, would have been expected to say, and doubtless did say, namely, ask the testatrix if she declared the paper to be her last will and testament. At first Miss Bloom said she did not remember, now she says she does. Either she is untruthful or is mistaken. Her testimony throughout shows her, I think, to be an ingenuous and truthful

person. I believe McLelland is the mistaken one. In any event ·I do not regard his testimony strong enough to overcome the attestation clause, plus the testimony of Miss Bloom.

While the court below did not err, but was right on the testimony presented to it, the decree must, nevertheless, be reversed and the cause remitted with direction to admit the will to probate.