In the matter of the estate of ANNA WHERRY, deceased.

[Argued February 6th, 1942.   Decided April 23d, 1942.]

*Messrs. Gebhardt & Gebhardt (Mr. W. Reading Gebhardt and Mr. E. Herbert Kiefer,* of counsel), for the appellant.

*Messrs. Mackerley & Friedman (Mr. Ackerson J. Mackerley* and *Mr. Peter Friedman,* of counsel), for the respondents Fred H. Bang, Mildred W. Bang, Lester J. Bang, Harold T. LeMon and Grace M. Henderson.

*Messrs. King & Vogt,* for the respondent Peoples National Bank.

*Mr. Claude E. Cook,* proctor and counsel *pro se* as administrator of the estate of Anna Wherry, deceased.

The opinion of the court was delivered by

BROGAN, CHIEF-JUSTICE.

This is an appeal from a Prerogative Court decree affirming a decree of the Warren County Orphans Court, which set aside the order of the surrogate, admitting a paper-writing

to probate as the last will and testament of the decedent, Anna Wherry. The Orphans Court held that there had been no "publication" of the will by the testatrix at the time the instrument was executed.

The facts attending the situation were that the testatrix, Mrs. Wherry, sent for J. Miller Welsh of the Peoples National Bank in Hackettstown, Warren County, New Jersey, and requested him to draw her will. Mrs. Wherry, suffering from paralysis at the time, was confined to bed. Mr. Welsh returned to his office, drew the will, and returned to Mrs. Wherry's home where the will was executed. The testatrix, unable to sign her name because of the paralysis, made "her mark." Mr. Welsh wrote her name. The instrument was witnessed by Mr. Welsh and a Mrs. Armstrong. The latter was a domestic servant in Mrs. Wherry's home, who was called up to the sick-room to witness the document. She testified that Mrs. Wherry made her mark in the presence of Mr. Welsh and (the witness) herself and they thereupon signed as subscribing witnesses, in the presence of Mrs. Wherry and of each other.

The will was made June 16th, 1939. The testatrix died December 19th, 1939. The surrogate admitted the will to probate on January 4th, 1940, and the petition of appeal by a nephew, non-resident, was filed on June 4th, 1940. The Orphans Court hearing was held June 26th, 1940.

The witness, Mrs. Armstrong, on being asked whether the testatrix said anything after signing, replied: "I don't remember." Asked what happened after the witnesses signed, the witness said she did not remember; and whether the testatrix said anything either before or after she signed, replied: "Not that I can remember." Nor did she recollect whether Mr. Welsh said anything at the time the will was executed. The witness knew, according to her testimony, that she was witnessing a will and when asked how she knew replied: "I couldn't say." Mr. Welsh then testified that the testatrix signed the will in the presence of both witnesses. When asked whether the testatrix said anything either before or after she signed the will, his reply was: "I think she said she was glad it was over." No further testimony was offered. The

court found there was no evidence "that the statutory requirement of publication has been met," and reversed the surrogate's order admitting the will to probate. This was error. The attestation clause, annexed to the will, was *prima facie* proof of publication and in the absence of clear and convincing proof to the contrary the presumption that the acts recited in the attestation clause were in fact done should have prevailed. The attestation clause was legally perfect in form (*N. J. S. A. 3:2-3*). The determination of the Orphans Court ascribed no efficacy whatever to it and this is not in accord with our decisions.

This court has recently held in an opinion prepared by Mr. Justice Porter (*In re Lazzati, 131 N. J. Eq. 54, 56*), "The presumption is that the attestation clause correctly records what actually took place and is *prima facie* evidence of the facts stated therein and cannot be overcome because of lack of recollection of the witnesses to the will * * *. Where there is a perfect attestation clause a will should not be denied probate without the strongest evidence to rebut the presumption of validity of which the attestation clause is a most important element of proof." Applying this well settled legal principle to the fact in proof before us, we conclude that there was *prima facie* proof from the attestation clause that the will was published and no affirmative proof that it was not. In the absence of such proof the presumption prevails.

The rule was laid down with admirable clarity in *Mundy* v. *Mundy, 15 N. J. Eq. 290,* as follows: "The attestation clause with the signature of the witnesses is *prima facie* evidence of the facts stated in it. It may be overcome by the witnesses themselves or by other witnesses or by facts and circumstances irreconcilable with its verity." See *Allaire* v. *Allaire, 37 N. J. Eq. 312; Bioren* v. *Nesler, 77 N. J. Eq. 560, 562.*

The executor appealed to the Prerogative Court. The learned Vice-Ordinary affirmed the Orphans Court, relying on these cases: *In re Sutterlin, 99 N. J. Eq. 363; 132 Atl. Rep. 115; Berdan's Case, 65 N. J. Eq. 681; In re Clark's Will, 52 Atl. Rep. 222* (not printed in the official reports) ; *In re Manners, 72 N. J. Eq. 854; In re Post, 118*

*N. J. Eq. 331.* These cases are inapplicable and therefore of no value, on the issue before us. In the *Sutterlin Case* there was a failure of execution, as we construed our statute, *supra*. In that case testator signed the document and declared it to be his last will in the presence of one witness. That witness thereupon signed as such in the presence of the testator. Later, and while testator and the first witness were still together, a second witness arrived and the testator exhibited the paper to him, said it was his will and asked him to witness it, and he did so. This is not a compliance with our statute on wills, *supra*. It is clear that one witness attested the testator's signature actually made in his presence while the second witness attested a signature which the testator acknowledged. And this we held to be insufficient. It is to be noticed that this court, in the *Sutterlin Case,* approves of and adheres to the rule laid down in *Mundy* v. *Mundy, supra*. In the *Burdan's Case* the subscribing witnesses, when called, testified that the paper was not signed by the testator in the presence of the witnesses; that he did not acknowledge his signature in their presence; and further, that the signatures of the witnesses were not made in the presence of each other. The presumption arising from an attestation clause in the face of such affirmative testimony is overcome. A comparable situation was proved in the case of the will of Clark and of Post.

Returning to the case at bar; in the Prerogative Court the executor, represented by a different proctor, presented a petition to take additional testimony. Under our old practice, the Prerogative Court having original jurisdiction in matters of this kind, it was common practice to present supplemental evidence on appeal. Such additional testimony was taken in this case. The privilege of presenting additional testimony is now curtailed by Prerogative Court rule 93, promulgated June 2d, 1941. This case, however, was brought on in the Prerogative Court on November 7th, 1940, before the change in rule became effective. The Vice-Ordinary allowed counsel to examine the two attesting witnesses *de novo,* saying that he would think over "whether I will consider that testimony on the appeal." Both witnesses then testified to facts that

showed proper execution of the will and both said that the attestation clause had been read to the testatrix who said, according to Mrs. Armstrong, that "everything was all right and she was glad it was over" and, according to Mr. Welsh, that she (the testatrix) "nodded her head yes and said 'I'm glad that is over.'" The witness Welsh explained his failure to testify fully in the Orphans Court by saying that he answered the questions that were asked him and "I was not asked to tell my story." The record in the Orphans Court seems to support his explanation.

Mrs. Armstrong said that she was "too scared" at the Orphans Court hearing and that she "guessed" she did not remember anything, but that after she got home and began to think things over, these happenings, then a year past, "came to her." We think the explanation of this disinterested witness quite reasonable.

The learned Vice-Ordinary concluded that the additional testimony was not entitled to any credit. If the testimony had been given any consideration it would have resulted in a reversal of the decree of the Orphans Court. But, be that as it may, even on the Orphans Court record, standing alone, there should have been a reversal by the Prerogative Court since the weight which, under our law, must be accorded to the attestation clause was not impeached or overcome by any testimony in the case in either court.

The executor did not appeal from the decree of the Prerogative Court. Meanwhile Claude E. Cook, counsel for the executor in the matter in the Orphans Court, was appointed administrator by the surrogate. The residuary legatee, however, Miss Sarah H. Van Sickle, appealed to this court from the decree under review.

The respondents take the position that in the circumstances Miss Van Sickle should not be heard as an appellant. They point out that she did not appeal from the decree of the Orphans Court to the Prerogative Court and argue that she is now estopped from so doing, relying on the cases of *In re Mary Hynes, 69 N. J. Eq. 485; Parker* v. *Reynolds, 32 N. J. Eq. 290, 293.* Her failure to take an appeal to the Prerogative Court, it is insisted, amounted to a waiver of her

right to do so. This argument is not sound. Her rights under the will were comprehended in the appeal taken by the executor. This was a representative action. True, she was not a party, as such. But in Orphans Court matters the right to appeal is not limited to *parties*. The constitutional and statutory provision for appeal is available to *persons* aggrieved. (*Cf. Conover v. Walling, 15 N. J. Eq. 167; Swackhammer v. Klein's Admr., 25 N. J. Eq. 503; Dietz v. Dietz, 38 N. J. Eq. 483, 485; Andress v. Andress, 46 N. J. Eq. 528.*) Our statute (*R. S. 2:30-16*) provides: "Any person aggrieved by an order or decree of the prerogative court may appeal therefrom in whole or in part to the court of errors and appeals, which appeal shall be taken within the same time and prosecuted in like manner as appeals from the court of chancery." Miss Van·Sickle plainly is a "person aggrieved." If the will is set aside she is deprived of the residuary legacy. The *Mary Hynes Case, supra,* relied upon by respondents, is quite different. There a will was admitted to probate. Mary Hynes, one of the children of the testatrix, appealed to the Orphans Court. Later she consented that the appeal be dismissed. On appeal by a third party the Prerogative Court held that the Orphans Court had power to dismiss an appeal, upon the consent of the party appealing. This was the only point to be decided in that case. Nor is the *Parker Case, supra,* any authority for the argument of the respondents. There the court held, among other things, that general creditors of a testator are not "aggrieved" by an order to sell the testator's lands to pay his debts, their pecuniary interest not being injuriously affected by the order for sale. The appellant in the instant case is a person whose pecuniary interest was directly affected by the order or decree of the Prerogative Court, one whose right of property may be established or divested by order or decree to be made in this court. *Cf. Swackhammer v. Klein's Admr., supra; Dietz v. Dietz, supra.*

We entertain no doubt about the right of Miss Van Sickle to have her appeal. The statute so provides in unmistakable language. She is an aggrieved person under our cases.

The decree of the Prerogative Court will be reversed, with direction that the will of Anna Wherry be admitted to probate.

*For affirmance*—None.

