9 N.J. Super. 280 (1950)
76 A.2d 33
IN THE MATTER OF THE ESTATE OF JOHN P. DuBOIS, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1950.
Decided October 24, 1950.
*282 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Howard G. Kulp, Jr., argued the cause for plaintiffs-appellants (Mr. Horace G. Brown, attorney).
Mr. Joseph Fishberg argued the cause for the defendant-respondent (Mr. Albert Rathblott, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
This appeal presents for our consideration the legal propriety of a judgment of the County Court (Probate Division) of Gloucester County affirming an order of *283 the Surrogate's Court admitting to probate the will of one John P. DuBois who died on August 8, 1948. The instrument is dated April 16, 1941. The sole criticism of the judgment is that the proof of the execution of the instrument in accordance with the statute (R.S. 3:2-3, N.J.S.A.) was inadequate.
It is immediately observed that the writing bears the signature of the testator and a full and complete attestation clause beneath which are the signatures of two witnesses.
It must be recognized that a complete attestation clause supplemented by proof of the signatures of the testator and of the subscribing witnesses carries a weighty presumption of the truth of the circumstances therein declared to have accompanied the execution of the will. Its purpose is to preserve in permanent form an accurate record of the facts which will survive the natural infirmities of human memory and to afford protection as well against deliberate misrepresentations. In re Seymour's Will, 114 A. 799 (Prerog. 1921).
The presumption arising from the clause has never been regarded as conclusive. It may be defeated or surmounted by oppugnant testimony, even by that of the subscribing witnesses. Berdan's Case, 65 N.J. Eq. 681, 55 A. 728 (Prerog. 1903). Yet the clause operates to cast the obligation upon the contestant to negative its averments upon the points in dispute. Bloom v. Terwilliger, 78 N.J. Eq. 221, 78 A. 742 (Prerog. 1911).
We have characterized the presumption as a weighty one. True, there are several earlier cases in which the presumption seems only to have been accorded the strength of prima facie proof. Mundy v. Mundy, 15 N.J. Eq. 290 (Prerog. 1858); Tappen v. Davidson, 27 N.J. Eq. 459 (Prerog. 1876); Allaire v. Allaire, 37 N.J.L. 312 (Sup. Ct. 1875); affirmed, 39 N.J.L. 113 (E. & A. 1876); Ayres v. Ayres, 43 N.J. Eq. 565, 569, 12 A. 621 (Prerog. 1887); Elkinton v. Brick, 44 N.J. Eq. 154, 15 A. 391 (Prerog. 1888).
It may, however, be readily perceived by an examination of the procession of pertinent decisions that the probative *284 substance of the presumption has been materially invigorated. The attestation clause is now accepted as "a most important element of proof" and the derivative presumption is deemed impregnable unless it is devastated by "strong and convincing evidence." In re Lazzati, 131 N.J. Eq. 54, 23 A.2d 566 (E. & A. 1942); In re Wherry's Estate, 131 N.J. Eq. 505, 25 A.2d 912 (E. & A. 1942); James v. Wendehack, 1 N.J. Super. 203, 63 A. 2d 710 (App. Div. 1949); cert. denied, 1 N.J. 603 (1949).
It has been stated that "the line of demarcation between what is `clear, satisfactory and convincing' and that which removes `all reasonable doubt' is more fanciful than real." In re Calef, 109 N.J. Eq. 181, 185, 156 A. 475 (Prerog. 1931); affirmed, 111 N.J. Eq. 355, 162 A. 579 (E. & A. 1932).
We necessarily proceed to examine the evidence in the present case with an appropriate recognition of the probative influence of the attestation clause.
The will, as previously stated, was executed on April 16, 1941. The subscribing witnesses were called upon to give their testimony on December 19, 1949. Obviously more than eight years had elapsed. There is nothing in their testimony, or indeed elsewhere in the transcript before us, to indicate that either consciously and intentionally testified untruthfully. The inadequacies in the testimony of the one or the other may reasonably be attributable to the inability to recall vanishing details which to them were momentarily insignificant.
The testimony of the witnesses may be represented to be in a posture which of itself fails to verify all of the essential recitals of the attestation clause rather than to confute them.
The witnesses to the will were Mrs. Adele Maloney and Miss Anne Lawler. These young ladies were employed by a Mr. Hunter, who was an insurance broker. The young ladies occupied desks approximately twelve feet apart in an office from which there was the entrance to the private office of Mr. Hunter.
*285 The testimony generates a plausible inference that the testator and Mr. Hunter engaged in a conversation at or near the entrance to the private office concerning a will or the execution of a will, which conversation by reason of Mr. Hunter's deafness was carried on in a tone easily overheard by both of the young ladies. In any event, it is acknowledged that as the testator thereafter approached them with a paper in his hand, both of the young ladies entertained the impression that they were to be asked to witness a will.
Mrs. Maloney explained: "On this particular day when I was handed this document I was asked to witness the document. Whether it was presented to me by Mr. Hunter, or whether it was presented to me by Mr. DuBois, I am not sure. Then I was seated at my desk, and all I know is that I was asked to witness it as a will, so far as I can recall. I knew it was a will, and I was asked, so far as I can recall, to witness it as a will." * * * "Q. And you were the one Mr. DuBois was standing alongside of? A. Yes."
Mrs. Maloney subscribed her signature. The testator then forthwith stepped to the desk at which Miss Lawler was seated. Miss Lawler testified that she did not hear what was said to Mrs. Maloney, did not actually see Mrs. Maloney sign her name, and that the testator upon his arrival at her desk merely pointed to his signature and said, "Would you witness this?" However, a few quotations selected from the testimony of Miss Lawler have a significant import. "* * * in some way I knew it was his will." "I couldn't remember her (Mrs. Maloney) signing it. I knew whatever she was signing, when I glanced up, was going to be brought over to me, because it was a will."
A few elementary principles consequently engage attention. The publication of a will is legally sufficient when enough is said or done in the presence and with the knowledge of the testator to cause the witnesses to understand distinctly that the testator desires them to know that the paper produced is his will which they are to attest as such. Such publication may be accomplished by words, acts, or signs. No precise *286 and specific formality is required. Darnell v. Buzby, 50 N.J. Eq. 725, 26 A. 676 (Prerog. 1893); affirmed, 52 N.J. Eq. 337, 31 A. 382 (E. & A. 1894); In re Halton, 111 N.J. Eq. 143, 161 A. 809 (Prerog. 1932).
It is not imperative that the testator actually sign in the presence of the witnesses or that they actually see him sign the will, providing he acknowledges in some efficient manner the signature to be his in the joint presence of both witnesses. Such an acknowledgment, like publication, need not be achieved by words. It may be manifested by the demonstrable conduct of the testator. In the present case both witnesses were well qualified to recognize the testator's signature. Compare, Stewart v. Stewart, 56 N.J. Eq. 761, 40 A. 438 (Prerog. 1898); affirmed, 57 N.J. Eq. 664, 68 A. 1116 (E. & A. 1898).
Here there is no doubt that the testator signed the will prior to the attesting witnesses and that the two witnesses on the one occasion and in immediate succession subscribed their names to the will in the presence of the testator. The attestation clause states that they signed in the presence of each other. While we think they did so in the present case, we may remark that our statute does not require that witnesses to a will shall sign in the presence of each other. Taylor v. Rector, &c., Christ Church, 118 N.J. Eq. 288, 179 A. 259 (E. & A. 1935).
The conclusion is that the facts embodied in the attestation clause have not been disproved by the requisite degree of countervailing evidence.
The judgment under review is affirmed.