In the matter of the last will and testament of Ann Beggans, deceased.

[Argued October 18th, 1904.   Filed January 31st, 1905.]

1. To a paper writing, offered for probate as a last will and testament, an attestation clause was appended, signed by two witnesses, in these words:

"We, the undersigned, witnessed Mrs. Ann Beggans sign this paper, which she declared and acknowledged to be her last will and testament.

"Michael B. Holmes,
"Peter F. Maguire."

*Held*, that such an attestation clause, being imperfect, *i. e.*, stating the performance of some of the acts required to make a valid testament, and omitting to state the performance of other acts also required, is *prima facie* evidence of the facts stated, but as to facts not stated, possesses no probative force.

2. The testamentary witnesses, when called to testify, disagreed as to whether there had been a publication of the paper as a will by deceased. —*Held*, that, as the witness who denied publication had signed the attestation that deceased had declared the paper to be her last will, and had made an affidavit before the surrogate to the same effect, the weight of evidence justified a finding that there had been due publication.

3. The testamentary witnesses were also at variance as to the time when they subscribed their names, and whether they had done so before or after the deceased had executed the paper. The testimony of the witness who asserted that the signatures of the witnesses were made before the deceased executed the paper being corroborated by a witness present

at the time—*Held,* that the conclusion against the validity of the execution was justified.

4. The testamentary witnesses agreed in stating that their signatures were made, not in the room in which deceased was, but in an adjoining room. They were at variance as to the place in that room where their signatures were made, one asserting that the place was within the vision of the deceased, if she had placed herself in a position to observe the witnesses' act; the other asserting that the place was wholly without her vision.—*Held,* that in the absence of proof that deceased took a position from which she observed or might observe the act, the presumption that the signing in an adjoining room was not in the presence of the deceased, as required by our statute, was not overcome.

On appeal from the Hudson county orphans court.

*Mr. Louis G. Morten,* for the appellant.

*Mr. Thomas F. Noonan,* for the respondent.

MAGIE, ORDINARY.

This appeal challenges the correctness of ·a decree of the Hudson county orphans court adjudging that a paper writing which had been theretofore admitted to probate by the surrogate of that county as the last will and testament of Ann Beggans, deceased, was not the last will and testatment of said deceased, and reversing the surrogate's order and revoking the letters testamentary issued thereon by him.

The transcript does not disclose the grounds upon which the orphans court made the decree attacked, but the decree is here supported in argument upon three grounds, viz.—*first,* that there was no publication of the paper as the last will of deceased; *second,* that the witnesses thereto signed their names before the deceased executed the same by making her mark; and *third,* that the witnesses did not sign their names in the presence of deceased.

The attestation clause appended to the paper was not in the usual form. It reads thus:

"We, the undersigned, witnessed Mrs. Ann Beggans sign this paper, which she declared and acknowledged to be her last will and testament.
"MICHAEL B. HOLMES,
"PETER F. MAGUIRE."

In *Allaire* v. *Allaire, 37 N. J. Law (8 Vr.) 312,* Mr. Justice Depue, in the supreme court, declared that a perfect attestation clause to a paper purporting to be a last will is *prima facie* evidence of all the facts stated therein, and that a will may be established upon the presumption arising from the form of the attesting clause unless there be affirmative evidence to disprove its statements. The same doctrine has been frequently enunciated in this court, and in *Allaire* v. *Allaire, 39 N. J. Law (10 Vr.) 113,* the legal rules declared by Justice Depue in the above-cited opinion were held in the court of errors and appeals to have been properly settled. See, also, *McCurdy* v. *Neall, 42 N. J. Eq. (15 Stew.) 333; Elkinton* v. *Brick, 44 N. J. Eq. (17 Stew.) 154; Clark* v. *Clark, 64 N. J. Eq. (19 Dick.) 361; Darnell* v. *Buzby, 50 N. J. Eq. (5 Dick.) 725; S. C., 52 N. J. Eq. (7 Dick.) 337.*

By a perfect attestation clause is meant one that asserts the performance of all the acts required to be done under our statute of wills to make a valid testamentary disposition. In the absence of any attestation clause the proponent must affirmatively prove the actual performance of all the required acts. *Stewart* v. *Stewart, 56 N. J. Eq. (11 Dick.) 761; Swain* v. *Edmunds, 53 N. J. Eq. (8 Dick.) 142; S. C., 54 N. J. Eq. (9 Dick.) 438.*

When an attestation clause states the performance of some of the requisite acts, but omits to state the performance of acts, also requisite, on reason and authority, the proponent must establish by evidence the performance of the latter acts. *Ayres* v. *Ayres, 43 N. J. Eq. (16 Stew.) 565.*

It will be observed that by the attestation clause now under consideration the subscribing witnesses assert the performance of two requisite acts, thus—*first,* that the deceased "declared" the disputed paper "to be her last will and testament;" and *second,* that they "witnessed" the deceased "sign this paper." They wholly omit to certify that they subscribed their names thereto in the presence of deceased. This requisite of the statute is designed to prevent substitution and fraud upon an intending testator (*Mandeville* v. *Parker, 31 N. J. Eq. (4 Stew.) 242*), and no amount of proof that the very paper signed by deceased was

that which the subscribing witnesses signed will avail to establish it as a will if it fails to show that their signatures were affixed in the presence of the deceased.

We may now consider the reasons upon which it is argued the orphans court must have rejected the paper.

First, as to the publication of it by deceased as her will. The attestation clause leaves it perhaps uncertain whether the declaration by deceased that it was her last will and testament was made in the presence of the witnesses or both of them. But, assuming that it thus omits to assert due publication, the question is whether proponent presented satisfactory proof of that fact. Both subscribing witnesses were called and examined. Holmes, who drafted the will at the request of deceased, testifies to facts justifying the inference of publication by assent. Maguire, the other witness, strongly contradicts him, and testifies that there was no language used in the interview which conveyed to him the idea that the paper was a will. But Maguire's testimony is met by the affidavit which he made before the deputy surrogate when probate was applied for. In that he swore that he saw deceased sign the paper and heard her publish and declare it to be her last will and testament. It seems to have been declared that such a deposition is admissible evidence before the orphans court on appeal, and, if supported by a perfect attestation clause, raises a strong presumption in favor of due execution. *Ludlow* v. *Ludlow, 36 N. J. Eq. (9 Stew.) 597; Farley* v. *Farley, 50 N. J. Eq. (5 Dick.) 484.* But upon the positive evidence of Holmes, considered in connection with the denial of Maguire, shaken by the express statement of the attestation clause which he signed, and by his positive deposition in the surrogate's court, and his lame explanation of the inconsistency of that deposition with his testimony, I am inclined to hold that the proponent established publication before the two witnesses.

The second question is whether, as claimed, the witnesses subscribed the paper before deceased executed it, which it appears she did by executing a mark with the aid of Holmes. On this subject the two subscribing witnesses are in absolute antagonism as to facts. Maguire swears that Holmes and he both signed the paper before deceased put her mark upon it. Holmes swears that

Maguire and he stood by the bed of deceased when she made her mark, and that he and Maguire afterwards subscribed. If this may be considered to leave the testimony in a state of equilibrium, the balance is, in my judgment, overcome by the evidence of a daughter of the deceased, who was called as a witness by proponent. She was in the bedroom where deceased was lying on the bed when Maguire came in. He went into the adjoining room and sat down. Holmes came in soon after and asked for the paper. It had been previously drawn by him. Deceased called for another daughter, who produced the paper and gave it to her mother, who in turn gave it to Holmes, who went into the adjoining room with Maguire. This witness also went in there and moved a table to the centre of that room, at which Holmes sat down and asked Maguire if he would sign the document; that she then went back to her mother's bedroom and was requested by her to get her a drink of water, and she left the bedroom for that purpose. But she says that before she left the bedroom she saw both Holmes and Maguire writing in the adjoining room, and that before they did so they had not been at her mother's bedside. It clearly appears that the door between that bedroom and the adjoining room in which Holmes and Maguire were was open, and there was nothing to prevent the witness seeing them and observing what they did. As the only writing done by Maguire was his signature, the testimony of this witness strongly corroborates him, and on this particular his deposition before the surrogate is silent. In my judgment this brings the case within the doctrine of *Lacey* v. *Dobbs, 63 N. J. Eq. (18 Dick.) 325,* and the decision of the court below may well stand on that ground.

The third question is whether proponent's proof establishes the fact that the witnesses subscribed their names to the paper in the presence of deceased.

On this subject the attestation clause is silent and the subscribing witnesses are again at variance. Both, however, agree that their act of subscribing was not done in the room in which deceased was, but in the adjoining room, at a table therein. They disagree as to the position of the table at that time, Maguire asserting that it was in the centre of that room and Holmes asserting that it was on one side of that room. It is conceded

that if it was in the centre, deceased could not have seen the act of the witnesses in subscribing, while if it was on the side, as fixed by Holmes, the deceased could have seen the act if she had turned in that direction.

A diagram of the bedroom and of the adjoining room and the various pieces of furniture therein was put in evidence. It was made under the instruction of the daughter of the deceased, who is the principal beneficiary under the will. She placed the table at which Holmes said the witnesses signed in the position in which she says it was at the time. Assuming that the daughter correctly pointed out to the draughtsman of the plan the respective positions of the furniture, it thereby appears that deceased, who was ill, was lying in a bed the head of which was against the partition between the bedroom and the adjoining room. The door between those rooms was a sliding door and open. The table in the adjoining room was in such a position as to leave a possible vision to one lying on the bed for a width of three and one-half feet. But in order to see the act of the witnesses in subscribing, the deceased would have been obliged not only to turn her head, but to look, as it were, above her head. If deceased was sitting up in the bed she would have been obliged to turn her head over her shoulder in order to see the witnesses.

There is no satisfactory proof as to which position deceased was in when the signatures of the witnesses were made, and no proof at all that she had turned her head or placed herself in a position to see that act.

In *Mandeville* v. *Parker, 31 N. J. Eq.* (*4 Stew.*) *242,* Runyon, Ordinary, declared that, under our statute requiring the subscribing witnesses to a will to sign in the presence of the testator, an attestation in the same room in which testator is is *prima facie* an attestation in his presence, and on the other hand, an attestation made in another room is *prima facie* not made in his presence. In *Ayres* v. *Ayres, 43 N. J. Eq.* (*16 Stew.*) *565,* Mc-Gill, Ordinary, applied that doctrine to a case in which the witnesses' signatures were affixed in the same room, upon a bureau at the foot of the bed on which deceased was lying. Upon the proofs he found that deceased at the time was so supported that he could see the motions of the pen used by the witnesses, though

he could not distinguish the letters the pen was forming, and that his eyes were open during the signing, and he held that the signing under those circumstances was a sufficient compliance with the statute.

If in the case in hand it had been made to appear that the deceased placed herself in a position to see the witnesses signing, and was looking in that direction, it may be that the presumption that the signing in the adjoining room was not a signing in her presence would have been overcome. But in the absence of such proof the presumption is not overcome. If Holmes is correct in his description of the place of signing by the witnesses, the signing is not shown to be a sufficient compliance with the statute. If Maguire is correct, the signing could not have been seen by deceased. The decree is therefore supported on this ground.

Upon both grounds above indicated, the decree must be affirmed.