Essex County Surrogate's Court.

IN THE MATTER OF THE ESTATE OF WILLIAM H. KELLNER, DECEASED.

Decided September 26, 1934.

Proctor for the executors, *Nathan H. Berger.*

Proctors for Jane Kellner, petitioner, *Braelow & Tepper.*

Proctors for the Federal Trust Company, executor under the will of Clara Kellner, *Lindabury, Steelman, Zink & Lafferty.*

WHINERY, SURROGATE. The will of William H. Kellner, dated June 1st, 1928, including two codicils, each dated June 22d, 1928, was probated by the surrogate of Essex county on September 10th, 1930. On August 13th, 1932, Jane Kellner, a granddaughter of decedent who became of age on March 26th, 1932, petitioned the surrogate to set aside the probate and a rule to show cause was issued thereon. The executors, on the return day, questioned the jurisdiction of the surrogate and this question was first determined. The

surrogate decided that, in a proper case, he had jurisdiction to set aside probate of a will. See opinion in 11 *N. J. Mis. R.* 201; 165 *Atl. Rep.* 585. He held that such jurisdiction was limited to cases based upon "fraud, newly discovered evidence, clerical error or other sufficient cause" relating to the probate itself and that it did not include jurisdiction to determine a contest concerning the existence of a will.

Thereafter the matter was brought on for a hearing before the surrogate. Testimony was taken on behalf of the petitioner and on behalf of the executors. It related only to the execution of the two codicils; no evidence was adduced relating to the execution of the original will. It is argued that if the decree of probate be set aside as to either or both codicils, then the entire probate of all three documents must be set aside. No precedents were cited by counsel, nor have any been found by the court, either for or against this argument. At the time of probate, proof was given to the execution of each of the three documents. On that occasion the original will might have been probated, even though it were shown that the codicils were improperly executed. The statute of 1917 (*Pamph. L.* 1917, *ch.* 133) granted to the surrogate the authority to open, vacate, *modify* or set aside a decree or order; it appears that plenary authority is there given to modify a decree or probate to the end that the probate of a codicil might be set aside for proper cause without disturbing the probate of the original will, where proofs of each document had been properly presented before the surrogate. It would be incongruous in a case where fraud in the probate of a codicil was proved, and no evidence offered attacking the main will, to set aside the entire probate of both documents, thereby possibly causing great confusion and uncertainty in the administration of an estate under a main will which was unquestionably the decedent's will. In this case the two codicils merely concern the burial of decedent in a vault and designate the relatives who may also find their final resting place in the same vault. The disposition of the estate is governed entirely by the provisions of the main will, and no evidence was offered at this hearing pertaining to its execution or probate.

Much evidence was adduced by each side with reference to the execution of the two codicils; little related to the proof of fraud, mistake or error in the probate of the will or codicils thereto. Questions concerning improper execution of a testament, undue influence or lack of testamentary capacity all relate to the existence of a will and jurisdiction to determine such questions lies in either the Orphans Court or the Prerogative Court under our present statutes and practice. An aggrieved person may either file a caveat or appeal from probate by the surrogate within the time stipulated therefor, if the existence of a will is to be contested. Here the petitioner prays the surrogate to set aside the probate many months after the expiration of the time within which an appeal might be taken, presumably to contest the existence of a will if the surrogate sets aside the entire probate. In the interest of the orderly administration of estates there must of necessity be a limitation upon the opportunity to attack a will; there must be some reasonable stability of probate and it should not be set aside by the surrogate except in cases wherein serious fraud, mistake or error has occurred within his jurisdiction. *In re Kalmowitz's Will*, 236 *N. Y. Supp.* 223; 134 *N. Y. Misc.* 508. Such jurisdiction, under our statutes, relates to the probate and not to the existence of a will.

At the probate of the will, Albert Schurr, a witness to the will, William F. Cunningham, a witness to one codicil, and Eugene Robinson, a witness to the other codicil, each signed the affidavit—proof of due execution of the document to which he was a witness, and each stated therein that, in his belief, testator at the time of signing was of sound and disposing mind, memory and understanding. The will and two codicils were thereupon probated. The narrow issue now before the surrogate is whether there has been any "fraud, newly discovered evidence, clerical error or other sufficient cause" in the probate to warrant setting aside such probate or modifying the decree of probate. The statement by each witness as to testamentary capacity has not been controverted in the evidence; certainly no testimony was offered to prove that the attesting witness knew or understood the con-

trary to be the case. No evidence whatever was offered to change in any manner the affidavit—proof by Schurr concerning the execution of the main will.

There was evidence seeking to impeach the proof of the codicil witnessed by Cunningham. The other witness to it was Louis Bloom. He testified that Cunningham took him to Mrs. Towne's home, where decedent then lived, telling him that he was wanted there to witness a signature. He says that he did not know it was a will when he signed as a witness, that the only remark made at the time was a statement that "everything is O. K.," but does not recall who said it, and that Cunningham did not sign in his presence, but left the house with him. His testimony otherwise was vague, uncertain and indefinite. He does not recall who was present, whether the attestation clause was read aloud, what was said or whether anything was said by anyone present. To many questions relating to the occasion, he replied, "I do not remember." Cunningham also testified. He says that the codicil was signed by the testator, Bloom and himself in the presence of each other; that Kellner, Bloom and he signed in that order while all three were at or alongside a desk in the sun parlor; that when he and Bloom arrived at the house Mr. Berger, in testator's presence, said that Mr. Kellner wished them to sign a codicil to his will; that those present on the occasion were testator, Bloom, Berger, Mrs. Towne, her two daughters and Cunningham; that he told Bloom before they went to the house that he was to witness a codicil to a will; that Kellner read the will in the presence of the witness; that Kellner asked Berger to ask him and Bloom to witness the codicil; that Berger read the document aloud before it was signed. The codicil as probated contains a perfect attestation clause. The testimony of Mr. Berger (the attorney who prepared the codicil) and Mrs. Aitken (Mrs. Towne), both of whom were present when this codicil was signed, corroborate the evidence of Cunningham. Mr. Berger further testifies as to this transaction:

"I then turned to Mr. Kellner and said to him 'Mr. Kellner, do you wish these men to act as witnesses to your codicil?' He said, 'I do' or words to that effect, I think. Then

I turned to the two men and I said, 'Mr. Kellner is about to execute a codicil to his last will and he wishes you to act as witnesses."

Mrs. Aitken (formerly Mrs. Towne) further testified that on that day, before these witnesses arrived, her father had told her he was making a codicil to his will.

Where there is a perfect attestation clause and the signatures of the witnesses are admitted, that clause makes *prima facie* proof of all the facts stated in it. *Darnell* v. *Buzby,* 50 *N. J. Eq.* 725, 727; 26 *Atl. Rep.* 676, and cases there cited. The burden is then on the contestants to negative its averments, upon the disputed points, by strong and convincing evidence. *Darnell* v. *Buzby, supra.* Of course if the testimony of both witnesses denies the facts set forth in the attestation clause, the will should not be probated. *In re Berdan's Will,* 65 *N. J. Eq.* 681; 55 *Atl. Rep.* 728. But where there is a divergence of the evidence given by the witnesses, one of them in agreement with the attestation clause, the will should be probated. *In re Van Sickle's Estate,* 41 *N. J. L. J.* 53; *In re Dillon's Estate,* 3 *N. J. Mis. R.* 784; 130 *Atl. Rep.* 245; *In re Sandmann's Will,* 68 *Atl. Rep.* 754; *McCurdy* v. *Neall,* 42 *N. J. Eq.* 333; 7 *Atl. Rep.* 566. And the corroborating evidence of other witnesses at the execution will also be considered in the determination of the observance of the legal formalities. *Miller* v. *Van Dyk,* 9 *Id.* 372; *In re Beggan's Will,* 68 *N. J. Eq.* 572; 59 *Atl. Rep.* 874. From the evidence, it cannot be said that Cunningham committed fraud in the probate of this codicil.

Eugene Robinson was the witness to the other codicil whose affidavit-proof was offered at its probate. He 'was the butler in the Towne home and the other witness to the codicil was Victoria Riley, a maid. This codicil also contained a perfect attestation clause and the burden of proof is therefore upon Jane Kellner, the petitioner. Eugene was sworn on behalf of petitioner. He testified that Mrs. Towne requested him and Victoria to come from the kitchen to the sun parlor; that when they did so, Mr. Kellner was holding a paper in his hand; that Berger, Mrs. Towne and her two daughters were also in the room; that Berger then told them that Mr.

Kellner wished them to witness his will and after taking the paper from Kellner, Berger read it aloud to them; that Kellner then took the paper to a desk where he signed it, after which he and Victoria signed as witnesses, all three signing on the desk in each other's presence. Victoria corroborated Eugene's evidence relating to the execution of the will. Neither recalled any conversation with, or statements by, Kellner, although Eugene says that he was in good humor. Mr. Berger testified that after the first codicil had been executed, Kellner talked to him and told him he wanted to designate the persons who might be buried in his vault with him; that a new codicil was then drafted by him; that at his suggestion the butler and maid were brought in as witnesses; that when they came in, he asked Kellner if he wanted them to witness the codicil and Kellner replied that he did; that he then told the two witnesses that Kellner wanted them to witness the codicil, after which he read it aloud; that then the testator and witnesses signed in each other's presence. Mrs. Aitken (formerly Mrs. Towne) was also present when this codicil was executed. She says that after the first codicil was signed, her father told her he wanted another codicil to provide for burial of other members of the family in his vault. Her evidence confirms that of Eugene and Victoria as to the execution of this codicil. The evidence adduced by Jane Kellner, the petitioner herein, was based upon statements which Eugene was alleged to have made to others relative to Kellner's physical condition, his mental condition and to the execution of the codicil, controverting Eugene's testimony both on the affidavit-proof of the codicil before the surrogate and his evidence at this hearing. These statements were given in the summer of 1932 to Messrs. Braelow & Verney, attorneys associated with the firm representing the petitioner, who had with them at the time Judge Bruno of the Recorder's Court at Ventnor. Three weeks before this hearing, Braelow and Verney again saw Eugene at the apartment of Gibbs, and asked if the contents of the statement were true; Braelow and Verney assert that he replied in the affirmative and Gibbs says that Eugene then said that some of it was true and some untrue. Eugene says

that at the first interview when the statements were made, he was frightened because one of the men had on a badge as a deputy sheriff and Judge Bruno was present, and that he did not realize the contents of the paper. Bruno said that Eugene was not calm on that occasion. It is on these statements that an effort is made to discredit Eugene's affidavit-proof at the probate and his testimony given as their own witness, albeit perhaps a hostile one. In view of his evidence at this hearing, corroborated by that of Victoria, Berger and Mrs. Aitken, it cannot be held that petitioner has sustained the burden of disproving the allegations of the attestation clause and in disclosing any fraud in the probate of this codicil.

Petitioner also seeks to have the order of probate set aside on the ground of newly discovered evidence. In order to set aside the order and grant a new hearing for this reason, it must appear that the new evidence is of such a character that it would probably change the result and produce the opposite result and that it could not have been discovered with reasonable diligence within the statutory time limited for the appeal from probate. See *Kirschbaum* v. *Kirschbaum,* 92 *N. J. Eq.* 7; 111 *Atl. Rep.* 697; *Cameron* v. *Penn, &c., Co.,* 116 *N. J. Eq.* 311; 173 *Atl. Rep.* 344. It has been held in our Supreme Court that verdicts ought not to be disturbed on charges that the principal witness for the plaintiff made statements at the trial in conflict with statements made to an alleged newly discovered witness. *Nightengale* v. *Public Service Co.,* 8 *N. J. Mis. R.* 238, 242; 149 *Atl. Rep.* 526. It does not appear to the court that the evidence adduced is such as would have changed the order or decree of probate nor that it could not have been ascertained with reasonable diligence within the time limited for appeal from probate.

Our 1917 statute, under which this proceeding was instituted, was not intended to enlarge the time within which there might be a contest over the existence of a will. Errors of law in the probate remain subject to the statutory remedy of appeal from probate. Whether the document is the will is a question to be determined by the Orphans Court or the Prerogative Court. Under our statute, the surrogate may alter

an order or decree made by him and grant a new trial or hearing "for fraud, newly discovered evidence, clerical error or other sufficient cause." His jurisdiction is limited, however, to fraud, new evidence or error in the probate itself and cannot be extended under our present statutes to a determination as to the validity of a contested alleged will. Cases, discussing the New York statute similar to our 1917 statute and antedating it, which are illuminating in this comment of the instant case are *In re Schlosser,* 63 *N. Y. Misc.* 163; *In re Tilden,* 98 *N. Y.* 434; *In re Hawley,* 100 *Id.* 206; *In re Henderson,* 157 *Id.* 423; *In re Ahler's Estate,* 104 *N. Y. Supp.* 529; *In re Gaffney,* 116 App. *Div.* (*N. Y.*) 583; *In re Peck,* 131 *N. Y. App. Div.* 81.

The petition of Jane Kellner to set aside the probate of the will and two codicils of William H. Kellner is therefore denied and the rule to show cause dismissed.